STATE of Missouri, Respondent,

v.

Shawn P. LYNCH, Appellant.

No. WD 62085.

Missouri Court of Appeals,
Western District.

April 13, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter and Leslie E. McNamara, Assistant Attorneys General, Jefferson City, MO, for Respondent.

J. Armin Rust, Lexington, MO, for Appellant.

Before VICTOR C. HOWARD, P.J., and LOWENSTEIN and SMART, JJ.

VICTOR C. HOWARD, Presiding Judge.

A jury convicted Shawn Lynch (Appellant) of driving while intoxicated (DWI) in violation of section 577.010,[1] and driving while his license was revoked in violation of section 302.321. On appeal, he challenges the sufficiency of the evidence to support the DWI conviction. He also challenges the propriety of his sentence and the prosecutor's closing argument. For the reasons set forth below, we affirm the judgment.

### Sufficiency of the Evidence

■ Appellant's first two points on appeal challenge the sufficiency of the evidence to support his DWI conviction.[2] In

---

1. Statutory references are to RSMo 2000.

2. Specifically, Appellant alleges in his first point that the trial court erred in denying his motion for judgment of acquittal. He claims the evidence was insufficient to make a submissible case that he was driving while intoxicated when the car he was allegedly driving went off the road at 3:00 a.m. and his blood

alcohol content was not tested until seven hours later. In his second point, he claims that the trial court erred in giving Instruction No. 5 (it was actually Instruction No. 6) because there was no competent evidence to show Appellant was intoxicated when he operated a motor vehicle at 3:00 a.m., "in that at least seven hours passed between the time of driving and the test." The points are sub-

reviewing the sufficiency of the evidence to convict Appellant of DWI, we must accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Scholl,* 114 S.W.3d 304, 307 (Mo. App. E.D.2003). We will not make determinations concerning credibility or weight to be afforded the evidence as those issues were for the jury, not this court, to determine. *Id.* Viewed in accordance with our standard of review, the evidence presented at trial established the following:

At approximately 6:45 a.m. on January 12, 2002, Officer Ashley Paige of the Higginsville Police Department received a report of an injured person at the Williams Travel Center (the truck stop) at the junction of I–70 and Highway 13 in Lafayette County, Missouri. When Officer Paige arrived at the truck stop, he found Appellant lying in a booth in the restaurant section. Appellant's left arm was bleeding and his ankle appeared to be injured. When Officer Paige asked Appellant what had happened, Appellant told him he was driving home and wrecked his car. When asked for identification, Appellant gave the officer a Missouri identification card.

Trooper Shane Green with the Missouri Highway Patrol arrived shortly thereafter to take over the investigation. Trooper Green noticed Appellant's injuries to his arm and ankle. He also noticed that Appellant's eyes were watery and bloodshot, and "he had a strong odor of intoxicants about his person." Appellant told Trooper Green that he was a passenger in his Camaro with three other people that had been involved in an accident on North Outer Road, which runs parallel to I–70.

When Trooper Green asked who and where the other people were, Appellant told him that he did not know their names or where they were; he said they left the scene of the accident in the opposite direction of him. Appellant then told Trooper Green that he was returning to his home in Corder, Missouri, from his girlfriend's house, where he had been drinking. When Trooper Green asked Appellant if he had anything to drink since the accident, Appellant responded that he had not. An ambulance arrived at the truck stop and evaluated Appellant's injuries, but he refused any further medical treatment. Appellant then agreed to go with Trooper Green to the scene of the accident.[3]

Appellant's Camaro was found in a ditch near North Outer Road west of Exit 45. After observing the scene, Trooper Green concluded that Appellant's car had been traveling west on the North Outer Road when the driver lost control and spun off of the road into the ditch. Trooper Green noted: there were "several items" in the passenger seat of the Camaro; the driver's side window was broken; the driver's door would only open with force, but the passenger door opened freely; there was blood on the driver's side door panel; and the keys were not in the car. When Trooper Green asked Appellant about the keys, Appellant took them out of the front pocket of his pants and gave them to Trooper Green. Appellant again claimed he was not driving. Trooper Green told Appellant that the evidence suggested otherwise and arrested him for DWI. Trooper Green advised Appellant of his rights and

---

stantively similar in that both are based on the sufficiency of the evidence as to the element of intoxication, so we consider the two points together.

3. Trooper Green testified at trial that throughout his investigation, Appellant "was antagonistic. He kind of had the attitude that he was better than us and that we should not even be dealing with him."

took him to the Higginsville Police Department.

When they arrived at the police station, Appellant agreed to take a breathalyzer test and give a blood sample for comparison with the blood found at the scene on the driver's door of his Camaro. At 9:53 a.m., the breathalyzer test showed that Appellant's blood alcohol content was 0.165%, which was more than double the legal limit of 0.08%. DNA analysis showed that Appellant's blood matched the DNA profile of the blood samples taken from the driver's side door of his car to a statistical probability of one in 128.4 billion people of the Caucasian population. A record check with the Department of Revenue revealed that Appellant's driver's license was revoked.

A grand jury indicted Appellant on three counts: DWI; driving while his license was revoked, suspended or canceled; and careless and imprudent driving. Prior to trial, the State dismissed the careless driving charge. After the court found defendant was a prior and persistent offender,[4] the State filed an amended information in lieu of indictment by interlineation, charging Appellant with DWI and driving while his license was revoked, suspended or canceled.

At his two-day trial on September 18 and 19, 2002, Appellant testified in his own defense. He told the jury that around 11:00 p.m. on the night in question he went to a strip club where his friends worked on Independence Avenue to show them the Camaro he had recently purchased. After showing them his car, he went back inside the club, where he drank approximately ten to fifteen "Crown and Cokes." Around 2:00 a.m., Appellant left the club. He testified that he convinced "Nina," a girl he

talked to at the bar that he "had met a couple of times," to drive him home because he "was in no condition to drive." According to Appellant, while on I–70 on the way to his house in Corder, Nina decided that she did not want to go to Appellant's house, so she exited I–70 East at Exit 45. She missed the ramp back on to I–70 West and ended up on North Outer Road, where she lost control of the car, causing it to spin into the ditch. Appellant testified that he and Nina "got out of the driver's side door." He said he "didn't even try the passenger door" because, due to the car's position in the ditch, "the way gravity or whatever you call it, it wouldn't have [opened.]" When Nina and Appellant walked to I–70 from North Outer Road, they spoke "very little" and ended up walking in opposite directions on I–70. He saw a semi-truck stop and pick up Nina as he was walking away.

Appellant testified that he tried to walk east on his injured ankle towards his home in Corder, but the weather was very cold, and he had only a light coat. He also tried to call his mother on his cell phone, but the phone went out before he could tell her where he was. Cold, Appellant returned to Exit 45, crawled up under the overpass, and built a fire to keep warm until daybreak. He testified that at daybreak, a woman stopped to help him. At Appellant's request, the woman called his mother to tell her where Appellant was. Before his mother could arrive, a man stopped and took Appellant to the truck stop, where Officer Paige found him.

On review we must determine whether this evidence was sufficient for a reasonable juror to find each element of the DWI offense to have been established beyond a

---

4. The record on appeal indicates that Appellant was previously convicted of or pled guilty to numerous (at least six) "DWI" or "BAC" offenses, in addition to multiple prior convictions for driving while suspended, driving while revoked, or driving without a license.

reasonable doubt. *Scholl*, 114 S.W.3d at 307. Section 577.010.1 defines the elements of DWI: "A person commits the crime of 'driving while intoxicated' if he [1] operates a motor vehicle [2] while in an intoxicated or drugged condition." Section 577.001.1 defines "operates" as "physically driving or operating a motor vehicle." Section 577.001.2 states that "a person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Appellant fails to develop any argument challenging the sufficiency of the evidence to establish that he was driving at the time of the accident, the first element of the offense, so we do not consider that issue. Rather, we limit our review to determining whether the evidence was sufficient for a reasonable juror to find that Appellant was in an intoxicated condition at the time.

Appellant argues that the time of driving was too remote from the time he was determined to be intoxicated to support an inference of intoxication while driving. He claims the element of intoxication at the time of operating an automobile was not proved by evidence of his intoxicated condition seven hours after the accident. In support, he cites *State v. Block*, 798 S.W.2d 213, 214–15 (Mo.App. W.D.1990), *State v. Dodson*, 496 S.W.2d 272, 273 (Mo. App.1973), and *State v. Liebhart*, 707 S.W.2d 427, 429 (Mo.App. W.D.1986).[5] In those cases, the defendants were involved in one-car accidents and found intoxicated at a later time. In each case, the court held in relevant part that the evidence was insufficient to establish that the defendant was intoxicated at the time of the accident. Those holdings turned on the fact that evidence of the defendants' intoxication at the time of the arrests, when remote from their operation of the vehicles, "without more" or "in itself," was insufficient to prove intoxication at the time the defendants were driving.

We have reviewed each of these cases and find they are factually distinguishable from Appellant's case. Here, there is "more," i.e., the evidence in this case is sufficient to establish that Appellant was intoxicated at the time of the accident: Appellant admitted to having ten to fifteen "Crown and Coke" drinks between 11:00 p.m. and 2:00 a.m. before leaving the bar in his car; the accident occurred at 3:00 a.m.; Appellant admitted to the police that he had been drinking prior to the accident; he told them he had not had anything to drink after the accident; when Officer Paige first contacted him at the truck stop at 6:45 a.m., Appellant told Officer Paige that he was driving home, and he wrecked his car; however, Appellant denied he was driving when he told Trooper Green what happened; he told Trooper Green that when the accident happened, he was a passenger in his car with three other individuals, whose names he did not know and who left the scene; later, he told Trooper Green he was returning to his home in Corder, Missouri, from his girlfriend's house, where he had been drinking; at trial, he testified that "Nina," a girl he had talked to at the strip club where he was drinking, was driving him home when she wrecked his car, but he did not see her again after she left the scene and hitchhiked back to Kansas City; Appellant's left arm was injured and bleeding, and his blood matched the blood samples taken from the driver's side door of his car,

**5.** *Block* and *Liebhart* were abrogated on other grounds in *Cox v. Director of Revenue*, 98 S.W.3d 548, 551 (Mo. banc 2003) (holding that "cases interpreting the pre 1996 law[, such as *Block* and *Liebhart*,] should not be relied upon to define 'operating' because they do not separately define that term").

which was the only place where blood was found in the car; Appellant had his keys in his pocket when Trooper Green asked for them; at 9:53 a.m. Appellant's blood alcohol content was .165%. Given this evidence admitted at trial, we find that a reasonable juror could find beyond a reasonable doubt that Appellant "[1] operate[d] a motor vehicle [2] while in an intoxicated ... condition" in violation of section 577.010.1.

Appellant's points I and II are denied.

## Sentence

■ Appellant claims in his third point on appeal as follows:

The trial court erred in sentencing him to the maximum sentence provided by law because the court disregarded the Missouri sentencing guidelines which recommended a sentence within the randge [sic] of 1–2 years and or probation in that there were no aggravating factors in the case which would have warranted to court [sic] in imposing such a harsh sentence and in so doing the defendant was denied equal protection of the law.

The jury convicted Appellant of DWI and driving while revoked. The jury assessed and declared punishment for the driving while revoked at imprisonment in the county jail for one year and a fine, the amount to be determined by the court. The court subsequently entered the recommended sentence and imposed a fine of $1,000. As for the DWI conviction, the court found Appellant to be a prior and persistent offender under section 577.023.5. Thus, in accordance with section 577.023.3, the court imposed a five-year sentence for the class D felony DWI and fined Appellant $5,000. Appellant challenges the five-year sentence for DWI as being harsh in light of the sentencing guidelines.

In 1994, the Missouri Legislature transformed the already-existing Sentencing Commission into the Missouri Sentencing Advisory Commission (the Commission). The legislature created the Commission to study .sentencing practices and disparities among the circuit courts of Missouri, section 558.019.6(2), and to "establish a system of *recommended* sentences, *within the statutory minimum and maximum sentences* provided by law for each felony committed under the laws of this state," section 558.019.6(3) (emphasis added). The sentencing guidelines created by the Commission are just that—guidelines or recommendations. The trial court is not mandated to follow the recommendations, but it must stay within the statutory range of punishment.

At the time of Appellant's sentencing, section 558.011(4) RSMo 2000 authorized a sentence of imprisonment for a class D felony at "a term of years not to exceed five years." Prior to imposing the maximum sentence, the trial court addressed Appellant as follows:

... I think [the jury] did speak loudly when they sentenced you to one year [on the misdemeanor offense of driving while revoked]. They maxed you out. They had anywhere from up to one year, and they gave you a year and a fine, and I think they had seen enough. I think they didn't believe you. You never accepted responsibility. You did go so far as to get up on the stand and lie. The only reason I wouldn't give you consecutive time is because [the prosecutor] doesn't want you in the county jail any longer.

Appellant claims that these statements indicate that the trial court "took the jury sentence on the misdemeanor as a signal that the judge should max him out on the felony," and, therefore, the court "did what it is not supposed to do, let anyone influ-

ence the court's sentence." We disagree. The trial court was simply commenting on Appellant's credibility and his continuing refusal to take responsibility for his actions, which it was free to consider in arriving at a sentence. The trial court was also well aware of Appellant's numerous prior convictions for DWI/BAC and license violations. Appellant does not challenge the court's finding that he was a prior and persistent offender. At the sentencing hearing, Appellant's counsel argued for the minimum sentence under the guidelines. The prosecutor argued for the maximum sentence allowed under the statute, which is what the trial court ultimately imposed. Even if the Commission's *recommended* sentence under the sentencing guidelines was less, the five-year sentence imposed by the trial court was within the statutory range of punishment under the laws existing at the time the sentence was imposed.

Appellant does not complain that the sentence imposed was in excess of the range of punishment permitted by statute, only that it was not within the recommended range of the guidelines and was disparate or inconsistent from other sentences imposed by the same rural trial court. In what appears to be an equal protection challenge to his sentence, Appellant pleads for this court to "take a stand" and do "what the legislature failed to do," i.e., he urges this court to put a stop to "disparate, inconsistent" sentences by "impos[ing] upon the trial judges the requirement that they become consistent in sentencing." He seeks the imposition of mandatory sentencing guidelines like those in the federal courts. We decline the invitation to judicially legislate.

Under the circumstances of this case, we find that the trial court committed no error by imposing a five-year sentence for the class D felony DWI, which was within the statutorily permitted sentencing range.

Appellant's point III is denied.

### Prosecutor's Closing Argument

In his fourth and final point on appeal, Appellant claims that the trial court plainly erred in allowing the prosecutor to argue in closing argument, "Who protects you and me? That's your job for today. I want you to find him guilty of driving while intoxicated, and I want you to find him guilty of driving while suspended," because the statement was an improper personalization.

Appellant acknowledges that his claim is not preserved and requests review on the basis of plain error. Pursuant to Rule 30.20, it is within this court's discretion to grant review for plain error. *State v. Monath,* 42 S.W.3d 644, 651 (Mo.App. W.D.), *cert. denied,* 534 U.S. 966, 122 S.Ct. 379, 151 L.Ed.2d 288 (2001). For us to exercise this discretion, Appellant must demonstrate that "manifest injustice or a miscarriage of justice will occur if this court does not correct the error he complains of." *Id.* Appellant has the burden of showing there is a reasonable probability that, in the absence of the statements made during the prosecutor's closing argument, there would have been a different verdict. *Id.* As this court recently explained, " '[c]ourts should rarely grant relief on an assertion of plain error as to closing arguments, for in the absence of an objection and request for relief, the trial court's options are limited to an uninvited interference with summation, which increases the risk of error.' " *Id.* (quoting *State v. Baller,* 949 S.W.2d 269, 272 (Mo. App. E.D.1997)).

We have reviewed the prosecutor's allegedly improper comments in the context in which they were made and decline

to review for plain error. Indeed, our courts have held that "[o]ne way in which improper personalization results is when the prosecutor asks the jurors to place themselves or some other identifiable person in the shoes of the victim or at the crime scene." *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000). However, our courts have permitted arguments by the prosecution that the jury has a duty to uphold the law and protect the community or public in general from the danger of the charged offense. *State v. Allen*, 81 S.W.3d 227, 229 (Mo.App. W.D.2002).

The prosecutor's use of the term "you" in questioning of the jury, "Who protects you and me?," did " 'not automatically amount to an improper personalization.' " *Id.* (quoting *State v. Lyons*, 951 S.W.2d 584, 595 (Mo. banc 1997)). Rather, the prosecutor's use of the term "you" implied "a general, all-encompassing [term] to include society as a whole, rather than as a reference to the jurors [themselves].... The prosecutor was advocating the personal safety of the community's citizens, and this is permissible." *Id.; see also State v. Bristol*, 98 S.W.3d 107, 115 (Mo.App. W.D. 2003) (finding the prosecutor's closing argument to the jury that "we pay" for those who are so irresponsible as to drive with a suspended license and are, therefore, not likely to carry insurance, "was focused on the general threat to the personal safety and economic security of the community-at-large and not individual jurors"). Because the prosecutor's comments were within the range of permissible argument, there could be no error, let alone plain error, in the trial court's failure to declare a mistrial.

Appellant's point IV is denied.

## Conclusion

The evidence was sufficient for a reasonable juror to convict Appellant of DWI;

the trial court did not err in sentencing Appellant as a prior and persistent offender to the maximum five-year sentence for his class D felony conviction; and we decline to review for plain error Appellant's allegation that the prosecutor's closing argument was an improper personalization. Accordingly, we affirm the trial court's judgment.

LOWENSTEIN and SMART, JJ., concur.