STATE of Missouri, Respondent,

v.

Jerimiah EDWARDS, Appellant.

No. ED 88320.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 10, 2007.

Kristina Starke, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Jerimiah Edwards (Defendant) appeals from the judgment upon his convictions by a jury for second-degree murder, Section 565.021, RSMo 2000,[1] and armed criminal action, Section 571.015, for which he was sentenced to concurrent terms of twenty-five and five years' imprisonment, respectively. On appeal, Defendant argues the trial court erred and abused its discretion in (1) overruling defense counsel's offer of proof and excluding testimony regarding Missouri's sentencing guidelines, and (2) refusing Defendant's Instruction A. We affirm.

Defendant was charged with first-degree murder and armed criminal action and tried before a jury. The jury found Defendant guilty of second-degree murder and armed criminal action related to the

shooting and killing of Kevin Jackson on August 31, 2002. The jury recommended sentences of twenty-five and five years' imprisonment, respectively for the offenses.[2] On appeal, this court affirmed Defendant's convictions, but reversed and remanded for a new penalty-phase because the trial court refused to allow Defendant to testify during the penalty-phase. *State v. Edwards,* 173 S.W.3d 384, 385–386 (Mo. App. E.D.2005). The instant appeal arises from Defendant's second penalty-phase proceedings.

During the second penalty-phase proceedings, Defendant sought to introduce evidence of the Missouri Sentencing Advisory Commission's ("Commission") sentencing guidelines through probation officer Fannie Davis (Davis). Defendant sought to introduce evidence that the presumptive sentence for second-degree murder and a level I offender was ten years while the aggravated sentence was fifteen years. The court denied the request, but received an offer of proof of Davis' testimony.

During the offer of proof, Davis testified she was familiar with the guidelines and she had been trained to use them in creating sentencing assessment reports. Davis testified that, based on Defendant's prior convictions, he would be classified as a level I offender. Davis indicated that, for a level I offender on a conviction of second-degree murder, the presumptive sentence was ten years and the aggravated sentence was fifteen years. Davis acknowledged she was not on the Commission that created the guidelines, and did not know how they arrived at the mitigated, presumptive, and aggravated sen-

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

2. For second degree murder, a class A felony, the range of punishment is ten to thirty years

or life imprisonment. Section 558.011(1). For armed criminal action, the range of punishment is five years to life imprisonment. Section 571.015.2

tences. She said she determined the level of the offender, then established what the recommended sentences were when drafting a sentencing assessment report. A sentencing assessment report, which was not requested in Defendant's case, considers a defendant's social history, arrest history, drug history, and other factors in addition to the sentencing guidelines. Davis testified the final recommendation from a sentencing assessment report might be "totally different" than the sentences provided for in the guidelines. Davis testified the guidelines "are utilized as recommendations and recommendations only" and that the final recommendation "may not agree with those recommended sentences" in the guidelines. She testified the guidelines are based on current sentencing practices in the State of Missouri based on averages of specific offenses. She further testified the guidelines alone do not consider the specific offender and the unique circumstances surrounding his crime and applied only to offenses that occurred on or after August 28, 2003.

Following the offer of proof, the State objected to Defendant's presentation of Davis' testimony and evidence of the sentencing guidelines. The trial court sustained the objection.

The second penalty-phase jury was unable to reach a unanimous decision as to Defendant's sentence. Consequently, the trial court sentenced Defendant. During arguments at sentencing, the State indicated a jury member provided information that the jury was split 11–1 in favor of life imprisonment on both counts, and that the dissenter sought a thirty-year sentence. Following arguments from defense counsel and the State, as well as statements from Defendant and his mother, the trial court sentenced Defendant to concurrent terms of twenty-five years' imprisonment for second-degree murder and five years' impris-

onment for armed criminal action. This appeal follows.

■ In his first point, Defendant argues the trial court erred and abused its discretion in overruling defense counsel's offer of proof and excluding testimony regarding Missouri's sentencing guidelines. Defendant contends that had the jury heard the testimony, it would have reached a unanimous verdict and assessed sentences less than the ones the trial court imposed. We disagree.

Our review of the trial court's ruling on the admission or exclusion of evidence is abuse of discretion. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). A trial court has abused its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.*

Section 557.036, RSMo Cum.Supp.2006, outlines the type of evidence allowed to be presented during the penalty-phase and provides in pertinent part:

> Evidence supporting or mitigating punishment may be presented. Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant.

Defendant argues the jury is entitled to rely on the same resources as the judge, who here was presented with the sentencing guidelines, in determining punishment. We are not persuaded by Defendant's argument. Relying on the guidelines alone creates a risk the jury will place too much emphasis on them and not treat them simply as recommendations. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006)(in affirming a death penalty case, the court

held that a judge, unlike a jury, is "presumed not to consider improper evidence during sentencing").

■ In 1994, the Missouri Legislature transformed the already-existing Sentencing Commission into the Commission. *State v. Lynch*, 131 S.W.3d 422, 427 (Mo. App. W.D.2004). The legislature created the Commission to study sentencing practices and disparities among the circuit courts of Missouri and to "establish a system of recommended sentences, within the statutory minimum and maximum sentences provided by law for each felony committed under the laws of this state." Section 558.019.6(3); *Id.* The sentencing guidelines created by the Commission are only guidelines or recommendations; the trial court is not mandated to follow the recommendations, but it must stay within the statutory range of punishment. *Lynch*, 131 S.W.3d at 427.

In *State v. Prosser*, 186 S.W.3d 330 (Mo. App. E.D.2005), the court examined the legislative intent behind Section 557.036.3. The court concluded "the purpose of having a separate penalty phase in non-capital trials, as in capital trials, is to permit a broader range of evidence relevant to the appropriate punishment to be imposed." *Id.* at 333. The statute expressly provides what evidence is permissible to support or mitigate punishment. However, because the sentencing guidelines do not address the specifics of Defendant or his offense, they are beyond the scope of evidence allowed during the penalty-phase. *See State v. Griffin*, 756 S.W.2d 475, 486 (Mo. banc 1988)(not error to exclude expert's testimony relating generally to the deterrent effect of death penalty inasmuch as testimony would not have aided jury in assessing aggravating and mitigating circumstances in murder trial).

The guidelines alone are insufficient to determine punishment as they do not account for the history and character of the offender, nor the circumstances of his crime. *Prosser*, 186 S.W.3d at 332; Section 557.036, RSMo Cum.Supp.2006. Moreover, the sentencing guidelines are beyond the scope of permissible evidence allowed in the penalty-phase of a jury trial as articulated by Section 557.036, RSMo Cum.Supp.2006. The trial court did not abuse its discretion in overruling defense counsel's offer of proof and excluding testimony regarding Missouri's sentencing guidelines. Point one is denied.

■ In his second point, Defendant argues the trial court erred and abused its discretion in refusing Defendant's Instruction A. Defendant contends Instruction A, which Defendant offered during the second penalty-phase, would have limited the range of punishment to twenty-five years' imprisonment. Defendant claims by allowing the jury to consider the full range of punishment, when the original jury acquitted him of first-degree murder, the trial court violated double jeopardy.[3] We disagree.

■ Our review of the trial court's refusal to give a tendered instruction is for abuse of discretion. *State v. Orton*, 178 S.W.3d 589, 591 (Mo.App. E.D.2005). Here, Defendant offered Instruction A at the second penalty-phase. Instruction A was an alternative to Instruction 3, which was patterned after MAI 305.01 and outlined the statutory range of punishment for second-degree murder and armed criminal action. Instruction 3 provided:

Defendant has been found guilty of murder in the second degree and armed criminal action. It will be your duty to determine within the limits prescribed

3. Defendant raises a double jeopardy challenge only as to Count I.

by law the punishment that must be imposed for those offenses:

On Count I, the punishment prescribed by law for murder in the second degree is:

1. life imprisonment,

2. imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years.

On Count II, the punishment prescribed by law for armed criminal action is:

1. life imprisonment,

2. imprisonment for a term of years fixed by you but not less than three years.

Instruction A was identical to Instruction 3 except that it did not expressly provide for life imprisonment on either count; also, it limited the maximum sentence for second-degree murder to twenty-five years' imprisonment. Instruction A provided:

The defendant has been found guilty of Murder in the 2nd degree and Armed Criminal Action. At this stage of the trial it will be your duty to determine within the limits prescribed by law the punishment that must be imposed for those offenses.

On Count 1, the punishment prescribed by law for Murder in the 2nd degree is: imprisonment for a term of years fixed by you, but not less than ten years and not to exceed twenty-five years.

On Count 2, the punishment prescribed by law for Armed Criminal Action is: imprisonment for a term of years fixed by you, but not less than three years.

Defendant's Instruction A failed to comply with MAI 305.01 in that it incorrectly set the punishment for second-degree murder from ten to twenty-five years' impris-

onment, when the punishment prescribed by statute is ten to thirty years or life imprisonment. Sections 565.021 and 558.011. As Instruction A failed to comply with the MAIs and the applicable statutory range of punishment, the trial court committed no error in refusing it. *See State v. Chapman*, 167 S.W.3d 759, 762 (finding trial court error where jury was improperly instructed with respect to the range of sentencing applicable to the crime charged).

Next, we turn to Defendant's double jeopardy argument. Defendant contends that because the first jury imposed a sentence of twenty-five years, thereby acquitting him of any conduct mandating a higher sentence, the second jury should not have not been allowed to consider the statutory range of punishment of ten to thirty years or life imprisonment for his conviction of second degree murder. "It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been acquitted of the crime charged." *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). In arguing the second jury should have been limited to the sentence imposed by the first jury, Defendant relies on *Bullington*. In *Bullington*, the court stated:

This Court...has resisted attempts to extend [the Double Jeopardy Clause] to sentencing. The imposition of a particular sentence usually is not regarded as an "acquittal" of any more severe sentence that could have been imposed. The Court has generally concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside....

*Id.* The court stated that an exception exists for capital defendants in Missouri based upon the statutory procedure by which juries are to determine whether a defendant should be sentenced to death. *Id.* at 446, 101 S.Ct. 1852. Here, Defendant's reliance on this exception to support his Double Jeopardy argument is misplaced as the court specifically emphasized that in non-capital cases, the Double Jeopardy Clause is inapplicable to sentencing. *Id* at 438, 101 S.Ct. 1852.[4]

In addition, Defendant argues that: "If a jury imposes something less than the maximum sentence allowed, the defendant has effectively been acquitted of whatever was necessary to impose the maximum." Therefore, concludes Defendant: "A new jury should not be able to consider a higher sentence than the one originally imposed, as the defendant has been acquitted of that which was necessary for the maximum sentence." The primary distinction between penalty-phases in capital and non-capital cases in Missouri is the State's burden of proof. *State v. Cobb*, 875 S.W.2d 533, 536 (Mo. banc 1994). The Missouri Supreme Court elaborated on this distinction:

> As construed, the Eighth Amendment requires that safeguards be in place to prevent the wanton and freakish imposition of the death penalty. . . . Among the approved safeguards is the requirement of proof of specific aggravating circumstances and an absence of mitigating circumstances that justify the death penalty. . . . In noncapital cases, there is no such requirement.
>
> Once guilt of a crime is determined, a sentence of imprisonment is ordinarily neither cruel nor unusual. Thus, strict sentencing guidelines to prevent Eighth Amendment violations are not implicated. The accused in a noncapital case is not being twice put at risk of a wholly different form of punishment by being resentenced. No constitutional mandate of proof beyond reasonable doubt exists with respect to the range of sentencing in such cases. The statutory procedure for assessing punishment, the factors weighing on punishment and the evidentiary burden to establish those factors are largely matters of legislative discretion. The constitutional double jeopardy prohibition does not speak to sentencing except in capital cases.

*Id.* Therefore, because a jury during the penalty phase in a non-capital trial is not required to make any findings of fact beyond a reasonable doubt, the Double Jeopardy Clause is not implicated.[5]

Finally, Defendant's argument that he was prejudiced "because had the jury been properly instructed, it likely would have reached a unanimous verdict and assessed sentences less than the twenty-five (Count 1) and five (Count 2) year sentences the court imposed" is speculative. The prosecutor indicated the jury was considering nothing less than thirty years' imprisonment and the sentence Defendant ulti-

---

4. The question of whether the Double Jeopardy Clause extends to non-capital sentencing proceedings was again addressed and rejected by the United States Supreme Court in *Monge v. California*, 524 U.S. 721, 733–734, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).

5. Although the claim in *Cobb* involved a remand for re-sentencing to allow the State to present the requisite number of prior offenses to prove the defendant was a persistent DWI offender, the same reasoning applies to the instant case. *Id.* at 534. Arguably, the instant case provides an even more persuasive scenario than *Cobb* where the State bore an additional burden of proof but the court still found no violation of the Double Jeopardy Clause. Here, unlike in *Cobb*, the State was not required to present any new evidence on remand.

mately received from the court was identical to that recommended by the first jury.

As Instruction A failed to comply with the MAIs in improperly instructing the jury with respect to the range of sentencing applicable to the crime charged, the trial court committed no error in refusing it. Moreover, because the sentence rendered by Defendant's first jury did not operate as an acquittal, nor did it raise double jeopardy concerns, the trial court did not abuse its discretion in refusing Defendant's Instruction A.

Judgment affirmed.

GEORGE W. DRAPER III, P.J. and PATRICIA L. COHEN, J., concur.