**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Gary R. THOMAS,
Defendant/Appellant.**

**No. ED 90393.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 18, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 2008.

---

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

Julie L. Brothers, Frank, Juengel & Radefeld, Clayton, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jayne T. Woods, Assistant Attorney General, Jefferson City, MO, for Respondent.

## OPINION

MARY K. HOFF, Judge.

Gary R. Thomas (Defendant) appeals from the judgment upon his conviction by a jury for second-degree assault, Section 565.060, RSMo 2000,[1] for which Defendant was sentenced to five years' imprisonment. On appeal, Defendant argues the trial court erred: (1) in overruling Defendant's motion for judgment of acquittal at the close of all evidence and in entering a judgment of conviction against Defendant because the State failed to make a submissible case for second-degree assault; (2) in overruling defense counsel's objection to the inclusion of racial epithets used during the assault on Sanchez Jackson (Victim); (3) in excluding Defendant's Exhibit A, an audiotape recording of Defendant's 911 call regarding a hit and run accident prior to the assault on Victim; (4) in excluding evidence from the penalty phase of Defendant's trial relating to the consequences of Defendant receiving a felony conviction; (5) in allowing the prosecutor to argue on rebuttal during the penalty phase closing argument that Defendant was given an opportunity for probation because such references were improper and prejudicial; and (6) in allowing State's Exhibit 15, an audiotape recording of Victim's 911 call following the assault, to be played in front of the jury. We affirm.

### Factual and Procedural Background

Defendant challenges the sufficiency of the evidence to support his second-degree assault conviction. Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: Victim was working as a "thrower" on a trash truck owned by American Eagle Waste Industry. Matt Raddatz (Raddatz) was driving the truck on their trash route when a car pulled up to the truck. Defendant's son jumped out of the car and began accusing Victim of hitting his car. Victim told Defendant's son, "I'm not driving, you have to talk to the driver." Defendant's son retorted, "Well, you had to see something. I know you seen something." Victim again responded that he had not seen anything, and that he was "just trying to do [his] job and go home." Defendant's son then looked around the side of the truck, got back into his car, and left. Victim and Raddatz continued their work on the trash route.

Approximately one minute later, Defendant's son returned to the trash truck with Defendant who had just called 911 to report a "hit and run" accident. Upon arriving at the accident site, Defendant's son used the car to block the trash truck from leaving. Defendant walked quickly past Raddatz, approached Victim and called him a "n[——]er" and told him he "needed to mind [his] own business." Defendant also yelled at Victim, "you f[——]ing n[——]er, you hit my son's car. Why you f[——]ing lying. Admit that you hit the f[——]ing car, you stupid n[——]er." Victim

---

1. Unless otherwise indicated, all further references are to RSMo 2000.

called Defendant a "motherf[——]er" and told Defendant not to disrespect him. Defendant and his son continued walking toward Victim, who told the men he "didn't want any problems" and began backing away. Defendant ran toward Victim and began hitting him in the face. Victim swung back, striking Defendant.

Defendant and his son then jumped on Victim. One wrestled with Victim while the other hit Victim. Eventually, Victim fell to the ground, and Defendant jumped on Victim's back and began choking him while Defendant's son kicked Victim repeatedly in the face. They told Victim, "stupid n[——]er, you['re] gonna die," and "[y]ou f[——]ing n[——]er, I'm going to kill you. I'm going to strangle you to death, you f[——]ng n[——]er." Raddatz tried to break up the fight by pushing Defendant's son away from Victim. After pushing Defendant's son away, Raddatz tried to pry Defendant off of Victim, but Defendant's son ran back up and continued kicking Victim in the face.

Eventually, Victim was able to bite Defendant's arm hard enough to free himself from Defendant's grasp. Defendant stood up and said, "This n[——]er just bit me." Defendant's son kicked Victim again before Victim was able to stand up and run away. Victim ran to a nearby Papa John's Pizza store and called 911.

In his 911 call, Victim told the dispatcher that he had just been "jumped" by two men who had kicked him in the head. Victim told the dispatcher, "[m]y nose is busted," and "[m]y head is sore and I can't breath[e]." Victim told the dispatcher, "my head [is] hurting so bad I can't even think right now."

After Victim fled, Defendant and his son turned towards Raddatz, called him a "n[——]er lover," and told him they were going to kill him and blow up his house because he was a "n[——]er lover." Rad-

datz retreated and told Defendant and his son that "the cops are coming."

One police car responded to the scene of the assault, while another went to Papa John's to respond to Victim's call. Victim was brought back to the scene, and, when he arrived, Defendant indicated to the police, "[t]here's the stupid f[——]ing n[——]er right there." After taking statements, the police arrested Defendant and his son. Victim was transported to the hospital, examined, and subsequently advised that he needed surgery.

Defendant was subsequently charged with first-degree assault. Defendant was tried jointly with his son before a jury. At trial, there was expert testimony that Victim's injury posed a substantial risk of death.

The jury found both men guilty of the lesser-included offense of second-degree assault, as submitted in Instruction 7, and recommended a term of five years' imprisonment for Defendant and one year in the county jail for Defendant's son. The trial court followed the jury's recommendation and sentenced Defendant to five years' imprisonment. This appeal follows.

## Sufficiency of the Evidence

■ In his first point, Defendant argues the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of all evidence and in entering a judgment of conviction against Defendant because the State failed to make a submissible case for second-degree assault. Defendant argues the evidence was insufficient to show that his actions caused Victim's serious physical injuries. Defendant argues the "elective" surgery Victim underwent caused his serious physical injuries, rather than any actions by Defendant. We disagree.

When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court gives great deference to the trier of fact. *State v. Smith*, 242 S.W.3d 735, 739 (Mo.App. S.D.2007) (*citing State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* (*citing State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)). We review the evidence in the light most favorable to the verdict, granting the State all reasonable inferences from the evidence and disregarding contrary inferences that are not such a natural, logical extension of the evidence that a reasonable juror would be unable to ignore them. *State v. Breese*, 250 S.W.3d 413, 420 (Mo.App. S.D.2008) (*citing State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001)).

Section 565.060.1(3) provides: "A person commits the crime of assault in the second degree if he: ... (3) Recklessly causes serious physical injury to another person." "Physical injury" means "physical pain, illness, or any impairment of physical condition." Section 556.061(20). "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Section 565.002(6). Moreover, a person is criminally responsible for assault in the second degree, by whatever means it was accomplished, provided his unlawful act proximately caused the resulting injury. *State v. Brown*, 937 S.W.2d 233, 235 (Mo.App. W.D.1996); *State v. Toran*, 878 S.W.2d 913, 914 (Mo.App. E.D.1994).

Here, the record shows that the injury Victim sustained as a result of Defendant's actions constituted serious physical injury before he had surgery. Before surgery, Victim suffered serious disfigurement and a protracted impairment of the functioning of his sinuses. In his 911 call, Victim told the dispatcher, "My nose is busted. I got knots on my head." He also informed the dispatcher, "My head is sore and I can't breath[e]."

At trial, Dr. Stanley Librach (Dr. Librach), a plastic surgeon, testified that when he examined Victim, he immediately noticed that Victim's forehead had a depression like a divot. Dr. Librach recommended surgery to remove bone fragments resulting from a fractured frontal sinus. Dr. Librach testified that after removing bone fragments, he had to clean out Victim's sinus cavity to avoid the risk of infection. Dr. Librach testified that after this type of injury and surgery, the sinus is no longer functional. Dr. Librach testified that the surgery itself created a substantial risk of death from infection. Victim also testified that, as a result of the assault, he suffers from memory loss, trouble sleeping, and serious headaches.

Contrary to Defendant's assertion that Victim's surgery was "elective," the evidence showed Victim's surgery was required. Victim testified that a week after the assault, he was told that he "had to get surgery done." The reconstructive surgery was the foreseeable result of Defendant's actions; therefore, any resulting "injury" from the surgery was proximately caused by Defendant's actions. *Brown*, 937 S.W.2d at 235; *Toran*, 878 S.W.2d at 914.

The trial court did not err in overruling Defendant's motion for judgment of acquittal and in entering a judgment of conviction against Defendant on the charge of second-degree assault. There was sufficient evidence for a rational juror to find beyond a reasonable doubt that Defendant caused serious physical injury to Victim,

which carried with it a substantial risk of death. Moreover, the evidence demonstrated that Victim's frontal sinus was no longer functional, that he suffered a permanent scar across the top of his skull and serious headaches, and that these injuries were the direct result of Defendant's actions. Point I is denied.

### Racial Epithets

■ In his second point, Defendant argues the trial court erred in overruling Defense counsel's objection to the inclusion of racial epithets used during the assault on Victim. Defendant contends that by allowing the prosecutor to elicit testimony that Defendant called Victim a "n[——]er," the prosecutor inflamed the passions of the jury thereby prejudicing Defendant. We disagree.

■ Preservation of evidentiary questions for appeal requires an objection at the time the evidence is sought to be introduced along with the same objection being carried forward on appeal. *State v. Irby*, 254 S.W.3d 181, 189 (Mo.App. E.D.2008). The purpose of objecting is to give the trial court an opportunity to make a "reasoned and informed ruling." *Id.* Here, although Defendant included a claim of error related to the admission of his use of racial epithets in his motion for new trial, he did not object to the admission of the evidence at trial or to the prosecutor's use of the evidence during opening or closing arguments. By not objecting, Defendant has not preserved his claim for appellate review. Consequently, we will reverse only if a plain error affecting a substantial right results in manifest injustice or miscarriage of justice. *Id.* at 192; Rule 30.20.

■ During the assault, Defendant repeatedly referred to Victim as a "n[——]er." Later, Defendant used the word "n[——]er" to identify Victim for the police. The use of racial epithets demon-

strated Defendant's general animus towards Victim and was highly relevant in showing Defendant's clear motive and intent to do harm. *State v. McDaniel*, 254 S.W.3d 144, 147 (Mo.App. E.D.2008). Therefore, probative value of Defendant calling Victim a "n[——]er" outweighed its prejudicial effect. *Id.*

Moreover, Defendant cannot demonstrate a manifest injustice insofar as Defense counsel specifically questioned the venire panel during voir dire about whether evidence of Defendant's use of racial epithets would inflame them or affect their ability to remain fair and impartial and no jury member indicated that it would. We find no error, plain or otherwise, in the trial court's allowing evidence of Defendant's use of racial epithets during and after the assault on Victim. Point II is denied.

### Defendant's 911 Call

■ In his third point, Defendant argues the trial court erred in excluding Defendant's Exhibit A, an audiotape recording of Defendant's 911 call regarding a "hit and run" accident prior to the assault on Victim. Defendant contends Exhibit A was admissible under the excited utterance exception to the hearsay rule to show his state of mind at the time of the assault. We disagree.

Initially, we note the State has filed a motion to strike pages A20–A28 of Defendant's appendix, which was taken with the case. Pages A20–A22 purportedly represent a transcript of Exhibit A. Pages A23–A28 purportedly represent a transcript of Victim's 911 call following the assault. There is no indication that either transcript was identified or admitted as an exhibit at trial and, therefore, neither is properly before this court. *See State v. Rosendahl*, 938 S.W.2d 274, 277 (Mo.App.

W.D.1997) (an appellate court is limited to the record made before the trial court and may not consider on appeal exhibits that have been unilaterally appended to a brief). The motion to strike is granted.

We also note that, at trial, Defendant failed to make an offer of proof as to the contents of the Exhibit A. "To preserve the matter for appeal, the proponent of the evidence must attempt to present the excluded evidence at trial, and if an objection to the proposed evidence is raised and sustained, the proponent must then make an offer of proof." *State v. Chambers,* 234 S.W.3d 501, 511 (Mo.App. E.D.2007). The offer of proof must be made during trial so that the trial court can make an informed ruling on admissibility in the context of the evidence actually adduced. *Id.* Because Defendant failed to make an offer of proof at trial as to the contents of Exhibit A and has failed to file, as part of the record, the exhibit with this court, his claim is not preserved for appellate review. Thus, our review is limited to plain error resulting in a manifest injustice or miscarriage of justice. Rule 30.20.

Here, the record reflects there was some discussion held privately in chambers regarding the admissibility of Exhibit A, where the State argued that its contents constituted hearsay and did not fall within the excited utterance exception. The record also reflects that on direct examination, Defendant testified generally about his 911 call:

> [Defendant]: ... My first instinct was to dial 911, which I did. I talked to a 911 operator ... [and] explained to her that our car had just been involved in a hit-and-run accident.
>
> [Defense counsel]: You called it a hit-and-run accident?
>
> [Defendant]: They left the scene of the accident. After that, I told her leaving the scene of the accident and a verbal threat, assaulted by an individual. She said, I'll dispatch a couple cars immediately.
>
> [Defense counsel]: And the purpose of calling 911 was?
>
> [Defendant]: To get the police involved.
>
> [Defense counsel]: To get the police involved?
>
> [Defendant]: Yes, sir. There had been an accident, so the police needed to be there.

Later, when Defendant sought to play the recording for the jury, the trial court stated, "I've already ruled on that. Same ruling."

■■■■■ Contrary to Defendant's assertions, Exhibit A does not fit within the excited utterance exception to the hearsay rule. "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Kemp,* 212 S.W.3d 135, 146 (Mo. banc 2007) (*quoting State v. Forrest,* 183 S.W.3d 218, 224 (Mo. banc 2006)). In order to be admissible, a hearsay statement must fall under an exception to the general rule against hearsay evidence. *Id.* "The excited utterance exception to the hearsay rule depends on a startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event." *Id.* at 146–47. "Among the factors to be considered in determining whether an excited utterance exists are [1] the time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration." *Id.* at 146. The excited utterance exception "is premised on the idea that where the statement is made under

the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant." *Id.*

Here, Defendant's 911 call did not amount to an excited utterance. Defendant testified that the event leading to the 911 call was the alleged "hit-and-run" accident involving his son and the trash truck. However, Defendant testified he was not present during the accident, he was not angry or agitated when he arrived at the scene of the accident, and there were no injuries or permanent damage arising from the accident. Defendant's 911 call was self-serving insofar as it reported that Victim and Raddatz had caused a "hit-and-run" accident with Defendant's son's car. *See Jones v. Wahlic,* 667 S.W.2d 729, 731 (Mo.App. E.D.1984) (statement offered by plaintiff as excited utterance was self-serving where statement claimed that defendant struck plaintiff).

On the record, there was not a sufficiently startling event to evoke an excited utterance from Defendant and, therefore, Defendant's 911 call did not qualify as an excited utterance. Because Defendant's 911 call was impermissible hearsay, the trial court did not plainly err in excluding it. We find no manifest injustice or miscarriage of justice. Point III is denied.

*Collateral Consequences of the Conviction*

█ In his fourth point, Defendant argues the trial court erred in excluding evidence during the penalty phase of Defendant's trial relating to the consequences of Defendant receiving a felony conviction. Specifically, Defendant contends he should have been allowed to present mitigation evidence regarding the loss of his military pension and his dishonorable discharge resulting from the guilty verdict. We disagree.

Before the penalty phase of Defendant's trial began, Defendant made a record that he wished to introduce evidence of "the collateral consequences of the conviction ... such as that [Defendant] was one year removed away from his pension, that he'll lose military status, that he will receive a dishonorable discharge, things of that nature." The trial court denied Defendant's request, finding that Section 557.036 did not permit the admission of evidence of collateral consequences to a defendant from conviction. However, because the record shows Defendant made no offer of proof regarding this evidence at trial, his claim related to its exclusion is not preserved for appellate review. *Chambers,* 234 S.W.3d at 511. Thus, our review is limited to plain error resulting in a manifest injustice or miscarriage of justice. Rule 30.20.

Section 557.036, RSMo Cum. Supp. 2006, outlines the type of evidence allowed to be presented during the penalty phase and provides in pertinent part:

3. ... Evidence supporting or mitigating punishment may be presented. Such evidence may include, within the discretion of the court, evidence concerning the impact of the crime upon the victim, the victim's family and others, the nature and circumstances of the offense, and the history and character of the defendant.

Section 557.036.3, RSMo Cum. Supp. 2006.

█ Defendant argues that under this statute, he should have been permitted to present evidence that his conviction would result in his dishonorable discharge from the military and the loss of his twenty-year pension after nineteen years of service in order to mitigate the jury's recommended punishment. We are not persuaded by Defendant's argument.

Evidence introduced in mitigation must be relevant to the defendant's character, prior record, or the circumstances of his offense. *State v. Hall*, 955 S.W.2d 198, 206 (Mo. banc 1997). Here, evidence of Defendant's dishonorable discharge from the military and loss of pension resulting from his conviction were not relevant to his character, prior record, or the circumstances of his assault upon Victim. Thus, this evidence was not admissible under the statute. *See State v. Edwards*, 228 S.W.3d 88, 91 (Mo.App. E.D.2007) (evidence of Missouri's sentencing guidelines was beyond the scope of permissible evidence allowed in the penalty-phase of a jury trial); *see also State v. Prosser*, 186 S.W.3d 330, 333 (Mo.App. E.D.2005) (purpose of having a separate penalty phase is to permit a broader range of evidence relevant to the appropriate punishment to be imposed).

The trial court did not plainly err in excluding evidence from the penalty phase of collateral consequences to Defendant from a felony conviction. There was no manifest injustice or miscarriage of justice from the exclusion of evidence not authorized by Section 557.036, RSMo Cum. Supp. 2006. We find no error, plain or otherwise. Point IV is denied.

### State's Remarks Regarding Probation

■ In his fifth point, Defendant argues the trial court erred in allowing the prosecutor to argue on rebuttal during the penalty phase closing argument that Defendant was given an opportunity for probation because such references were improper and prejudicial. We disagree.

Our review for alleged error in closing argument depends upon whether or not defense counsel objects. *State v. White*, 247 S.W.3d 557, 562 (Mo.App. E.D.2007). Where defense counsel objects, we will reverse the trial court's decision only upon a showing that the trial court abused its discretion. *Id.* at 563.

Here, during Defendant's closing argument, trial counsel stated that Defendant and his son "weren't given a chance for probation." The prosecutor objected, and the trial court sustained the objection, but did not strike the argument. On rebuttal, the prosecutor argued, "He says they didn't have a chance at probation. That's not true. We're here because they wanted this. We're here because they wanted to contest this."

■ Although matters related to probation or parole are not for the jury's consideration, "[a] prosecutor may retaliate to issues raised in defense counsel's closing argument, even if the prosecutor's argument would otherwise be improper." *State v. Sheridan*, 188 S.W.3d 55, 65 (Mo. App. E.D.2006). Here, because Defendant first raised the issue of his opportunity for probation, the prosecutor was allowed to respond to that argument in retaliation. The trial court did not abuse its discretion. Point V is denied.

### Victim's 911 Call

■ In his sixth and final point, Defendant argues the trial court erred in allowing the State to play State's Exhibit 15, an audiotape recording of Victim's 911 call following the assault. Defendant contends Exhibit 15 constituted inadmissible hearsay. We disagree.

Our review of a trial court's admission of evidence is for abuse of discretion. *Irby*, 254 S.W.3d at 187. "The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy." *Kemp*, 212 S.W.3d at 146. "Among the factors to be considered in determining whether an excited

utterance exists are [1] the time between the startling event and the declaration, [2] whether the declaration is in response to a question, [3] whether the declaration is self-serving, and [4] the declarant's physical and mental condition at the time of the declaration." *Id.*

Here, the evidence showed Victim contacted 911 immediately after he fled from the assault. Moreover, Victim's 911 call exhibited he was still in a state of excitement: he was out of breath and stated he could not breathe; he failed to identify either himself or Defendant and he focused primarily on his injuries. Finally, in his 911 call, Victim indicated the scene of the assault was near Papa John's and that Papa John's was "around the corner" from where he was attacked. There was more than sufficient evidence to indicate Victim's statement was provoked by "a startling or unusual occurrence sufficient to overcome normal reflection," thereby qualifying under the excited utterance exception to the hearsay rule. *Kemp,* 212 S.W.3d at 146–47; *see also State v. Edwards,* 31 S.W.3d 73, 78–80 (Mo.App. W.D.2000) (upholding the admission of the victim's statement under the excited utterances exception even though "the record d[id] not reveal exactly how much time elapsed between the knifing and the 911 call" because "there was substantial circumstantial evidence that the call occurred shortly after the knifing, and while the caller was still in a state of excitement as a result of being wounded").

The trial court did not abuse its discretion in admitting the audio recording of the 911 call placed by Victim following the assault. Exhibit 15 was properly admitted under the excited utterances exception to the hearsay rule. Point VI is denied.

### Conclusion

The judgment is affirmed.

BOOKER T. SHAW, Presiding Judge and KATHIANNE KNAUP CRANE, Judge, concur.