STATE of Missouri, Respondent,

v.

D. BYRON, Appellant.

No. WD 66807.

Missouri Court of Appeals,
Western District.

May 22, 2007.

Michelle Dee Carpenter, St. Joseph, MO, for appellant.

Kathleen Andrews Fisher, St. Joseph, MO, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and EDWIN H. SMITH, JJ.

PER CURIAM.

Appellant D. Byron[1] appeals his jury conviction of driving while intoxicated. Byron claims the evidence was insufficient to support the jury's verdict and his motion for judgment of acquittal at the close of all the evidence should have been granted. For the following reasons, the judgment is reversed.

### Background

Byron only challenges the sufficiency of the evidence; he claims that the court should have granted his motion for acquittal. In reviewing this, we are limited to a determination of whether the evidence was sufficient for a reasonable jury to find him guilty beyond a reasonable doubt. *State v. Rose*, 86 S.W.3d 90, 105 (Mo.App.2002). We view the evidence and all reasonable inferences in the light most favorable to the verdict and disregard all contrary evidence. *State v. Lynch*, 131 S.W.3d 422, 424 (Mo.App.2004). We refrain from weighing the evidence or determining issues of credibility. *Id.* Viewed in

the light most favorable to the verdict, the facts are as follows:

In the early morning hours of July 19, 2005, Officer Brian McClintick was dispatched to the intersection of 36th Street and Frederick Avenue in St. Joseph, Missouri. A 9–1–1 call had been placed around 1:45 a.m. reporting an accident in the area of 36th and Frederick. Officer McClintick had been through the intersection earlier that night at around 12:40 a.m. or 12:50 a.m. and had noticed no accident at that time.

Frederick Avenue was under construction. The officer found that a car had gone through several tall traffic cones marking off a construction area and had stopped in the construction area. Part of the passenger-side front wheel was hanging over the edge of the road because there was no shoulder and there was about a two-foot drop off where the shoulder should have been.

Joshua Rudisill and his fiancé had noticed the accident while driving through the intersection. Rudisill's fiancé called 9–1–1 while Rudisill went to investigate the vehicle. He found no one inside or near the vehicle. Officer McClintick responded to the 9–1–1 call and spoke with Rudisill at the scene of the accident.

Officer McClintick found a muddy footprint near the vehicle which did not match his or Rudisill's shoes. Officer McClintick retrieved the vehicle's registration information from the glove box and determined that the vehicle belonged to Byron.

Officer McClintick radioed in this information and requested that someone go to Byron's home to speak with him. Officer Aaron Beene responded to the call and went to Byron's home at around 2:00 a.m.

---

1. The appellant's given name was Donald Byron Sherman. He changed his name to "D. Byron."

After finishing his investigation at the accident scene, Officer McClintick joined Officer Beene at Byron's home. Both officers noticed that Byron was intoxicated when they arrived at his home. Both officers testified that Byron smelled of alcohol, had watery, bloodshot eyes, had slurred speech, and had trouble with his balance. Both officers also noticed that Byron's pant legs had mud on them and that a pair of muddy shoes were just inside the door of Byron's home.

When the officers asked Byron about the accident, he indicated that he knew nothing about it but said that his father had borrowed the car. The officers contacted Byron's father, Donald Sherman, who denied borrowing the car. Byron's father testified at trial that he had been awakened earlier that night by a call from Byron asking his father to pick him up because he had been in an accident. Byron's father testified that he picked Byron up at a Food 4 Less located on North Belt Highway approximately one-quarter mile from the accident site. He also said that he and Byron went to inspect the car after he picked Byron up, but concluded that it would have to be towed to be removed from its location. He indicated that at the time he picked Byron up through the time he took him home, Byron did not appear to be intoxicated. He said he was with his son about twenty minutes altogether. He was not asked either on direct or cross-examination whether Byron had purchased anything at the Food 4 Less or was carrying anything when he was picked up.

After speaking with Byron, Officer McClintick seized the muddy shoes and placed Byron under arrest for leaving the scene of a motor vehicle accident. He searched Byron and found a set of keys.

The officers and Byron returned to the scene of the accident where they took a picture of the muddy footprint Officer McClintick had found with Officer Beene's camera. The footprint matched the tread in the muddy shoes they had retrieved from Byron's home. Officer McClintick testified that he tried the keys seized from Byron and they started the vehicle.

The officers transported Byron to the law enforcement center where Officer McClintick performed several field sobriety tests on Byron. Byron performed poorly on all sobriety tests. Officer McClintick then asked Byron to take a breathalyzer test and informed him that if he did not take the test his license would be immediately suspended. Byron refused, stating, "You didn't see me driving. You didn't catch me driving."

Byron was charged by information with driving while intoxicated, in violation of section 577.010 RSMo,[2] and with careless and imprudent driving, in violation of section 304.012. After a jury trial, Byron was found guilty of driving while intoxicated and not guilty of careless and imprudent driving. Byron was sentenced to four months in jail with suspended execution of sentence; he was placed on probation for two years, ordered to do twenty-five hours of community service, and given fifteen days of shock time. He was ordered to go through the Substance Abuse Traffic Offender Program, attend one Alcoholics Anonymous meeting per week while on probation, and have an ignition interlock on his car at all times while on probation. Byron now appeals to this court.

### Standard of Review

Our review is limited to a determination of whether there is sufficient evi-

2. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

dence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993); *see also State v. Grice,* 914 S.W.2d 360, 365 (Mo.App.1995). "We accept as true all evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary." *Grice,* 914 S.W.2d at 365.

## Analysis

Byron claims that the evidence was insufficient to establish that he was actually operating a motor vehicle while intoxicated. He claims that, at best, the evidence showed that he had been driving a motor vehicle and had wrecked his car, and that then, thirty minutes to an hour later, he was intoxicated. According to Byron, the evidence was insufficient to link his intoxication to the actual operation of the vehicle.

The case law on this issue is very fact-specific. Generally, when there is a significant interval of time between the time of an accident and the time that the defendant is observed to be intoxicated, the prosecution must offer specific evidence that the defendant was intoxicated at the time the defendant was driving. In *State v. Dodson,* 496 S.W.2d 272 (Mo.App.1973), for instance, the defendant was in a tavern until around 7:00 p.m. *Id.* at 272. Shortly before 9:00 p.m., he ran off the highway into a ditch. *Id.* An unidentified passerby came by the scene of the accident, assisted the defendant out of his car, and gave him a ride home. *Id.* Around 9:40 p.m., an officer for the State Highway Patrol came to the defendant's house to talk to him about the accident. *Id.* at 272–73. At that time, the officer noticed that the defendant showed signs of being intoxicated. *Id.* at 273. The officer also testified that the defendant denied being in any accident,

denied driving his car that evening, and said he had not left home all evening. *Id.*

The court concluded that although the State may have shown that the defendant was intoxicated at 9:40 p.m., this did not tend to prove that the defendant was intoxicated forty-five minutes earlier when the accident apparently occurred. *Id.* The court stated that "the fact [that] a defendant was under the influence of [alcohol] at the time of his arrest, without a showing of more, will not support a finding that he was in that condition when driving a motor vehicle at some earlier time." *Id.* at 274 (*quoting State v. Creighton,* 201 N.W.2d 471, 473 (Iowa 1972)). *See also State v. Block,* 798 S.W.2d 213 (Mo.App.1990) (officers contacted defendant at his home two and one-half hours after the negligent driving; only other evidence was neighbor's comment that defendant's van smelled of alcohol at the time she spoke with the defendant while defendant was in his van).

In contrast, in *State v. Johnston,* 670 S.W.2d 552 (Mo.App.1984), a state trooper was dispatched to investigate an accident on a farm road that had occurred about 11:30 p.m.; the trooper reached the scene at about 11:58 p.m. *Id.* at 553. The vehicle was stuck in a ditch with the defendant sitting in the driver's seat. *Id.* When the officer approached the defendant, he noticed that the defendant appeared to be intoxicated. *Id.* at 554. There was an interval of twenty-eight minutes between the occurrence of the accident and the arrival of the officer. *Id.* at 556. There was no indication that the defendant had access to alcohol during that time interval. *Id.* The court in *Johnston* held that there was sufficient evidence to convict the defendant. *Id.* at 557. *Johnston* stands for the proposition that an interval of less than thirty minutes between the accident and the observation of the driver's lack of so-

briety tends to show intoxication at the time of driving.[3]

A different kind of factual scenario was presented in *State v. Lynch*, 131 S.W.3d 422 (Mo.App.2004), but the case demonstrates the significance of evidence as to whether the defendant had anything to drink, or access to alcohol, between the accident and the arrest. In that case, the defendant had been in a one-car accident before he was found at a truck stop by police. *Id.* at 424. He said someone else had been driving at the time of the accident, but admitted that he was intoxicated when he left a bar about an hour before the accident. He said he had not had anything to drink since the time of the accident. There was circumstantial evidence showing that he was the person driving at the time of the accident. There was abundant evidence of his intoxication at the time he was found. *Id.* at 426. The court concluded that the evidence was sufficient for a submissible case that he had been intoxicated while driving. *Id.* at 427. The court noted that the defendant admitted that he had not had anything to drink *after* the accident. *Id.* at 426. The admission that the defendant had not had anything to drink for one hour before the accident, and that he had not taken additional alcohol *after* the accident, showed that he was intoxicated not only when found, but also when he had been driving.

■ Here, the evidence at trial showed that Byron had run his car off the road into the construction area. Byron says all that is shown in this case is that at some time up to sixty minutes or so after the accident, Byron was intoxicated at his home. He had access to alcohol in the interim. He did not admit being intoxicated at any time. He did not say whether he had had anything to drink since the accident. He did say, "you did not catch me driving." That statement implies that he was driving; but it is equivocal as to whether it could be considered an admission that he *was intoxicated* at the time he was driving. He did refuse the test, which may be considered pursuant to section 577.041,[4] but because of the lapse of time and the apparent access to alcohol in the interim, his later refusal of the test could not be regarded as highly probative of the fact that he was intoxicated when he was driving.

The only testimony concerning Byron's condition immediately after the accident was from Byron's father. Although the jury was free to disbelieve the father's testimony that Byron was sober at that time, there is no other testimony as to Byron's condition after the accident up until the time the officers found him at his home. *See Dodson*, 496 S.W.2d at 275 (*quoting Boatmen's Savings Bank v. Overall*, 16 Mo.App. 510, 515–16 (Mo.App.1885)) ("We find no evidence in the record to support this instruction, unless we can assume as a legal proposition that a jury may, when a fact is asserted by a discredited witness, not only disbelieve him, but consider his assertion of one fact as affirmative testimony of another fact diametrically the reverse. This we must decline to do.")

---

3. This proposition is in accord with the generally recognized principle that it often takes thirty minutes or more for alcohol that is imbibed to enter the bloodstream to such a degree as to produce intoxication. *See* 2 Donald H. Nichols & Flem K. Whited III, *Drinking/Driving Litigation: Criminal and Civil* §§ 14.3, 14.27 (2d ed.1998).

4. Section 577.041 provides that evidence of the refusal to take a test allowed pursuant to section 577.020 shall be admissible in a proceeding under, *inter alia*, section 577.010. *See State v. Rose*, 86 S.W.3d 90, 106 (Mo.App. 2002).

There was no evidence that Byron did *not* obtain alcohol at the Food 4 Less and consume it in the relevant time interval. This case is like *Dodson* and unlike *Lynch*. In *Dodson*, the time interval between when the defendant was driving the vehicle and when he was found intoxicated was approximately forty minutes. *Dodson*, 496 S.W.2d at 273. There, as here, the defendant returned to his home and did not remain at the scene of the accident. *Id.* at 272. In that case, the court found the evidence insufficient. *Id.* at 274. In *Lynch*, the evidence showed (because of the defendant's admission) that the defendant did not consume any intoxicating beverages between the time of the accident and the contact with police. 131 S.W.3d at 426.

Byron's accident occurred sometime after 12:40 a.m. and prior to 1:45 a.m. Even if the jury entirely rejected all of the testimony of Byron's father, as to picking him up at the Food 4 Less, we still have the fact that Byron was not contacted by officers at the accident scene, but was contacted at his home at around 2:00 a.m., perhaps as much as an hour and twenty minutes after the accident.

The State focuses on the statements Byron made to the officers. Byron falsely told the officers his father had borrowed the car. Byron told the officers he knew nothing about the accident, another statement which was false. And when asked to submit to the breathalyzer test, Byron stated, "You didn't see me driving. You didn't catch me driving." While these statements are consistent with a fear that he would be accused of driving while intoxicated, they do not demonstrate that Byron *actually was* intoxicated when he drove the car into the construction area. *See Dodson*, 496 S.W.2d at 273. The court in *Dodson* specifically regarded the evidence of the defendant's lack of truthfulness as insufficient to sustain a conviction. *Id.* We believe we are constrained by *Dodson* here, because the facts are very similar.

The question is whether a reasonable jury could conclude beyond a reasonable doubt on this evidence that Byron was guilty of driving while intoxicated. *See Grim*, 854 S.W.2d at 411. This case is close because of the time parameters. This is a criminal DWI case, not a civil administrative license revocation case. *See, e.g., Riche v. Dir. of Revenue*, 987 S.W.2d 331, 334 (Mo. banc 1999) (noting the distinction in the context of applying the exclusionary rule). Byron had no duty to present any evidence or explain any details. The burden was all on the State. *See* MAI–CR 3d 310.04[4]. There was no requirement that Byron rebut a *prima facie* case by presenting evidence. *Id.* The forty-minute-or-more interval between the accident and the contact with officers, together with the fact that Byron had access to alcohol, is difficult for the State to overcome, even balanced against the fact that Byron's conduct, after contacted by police, was consistent with someone who had been driving while intoxicated (falsely denying that he had been driving and refusing the test). We grant the State all reasonable inferences from the evidence. *Grim*, 854 S.W.2d at 405. The problem is that there is no particular inference one way or another about whether Byron acquired additional alcohol at the Food 4 Less or anywhere else. There are insufficient facts to support an inference.

Had Byron been found at the scene of the accident relatively soon after the accident occurred, and had there been all the same evidence of intoxication, this would be a different case. But the question here is whether, on these facts, there was a basis for believing it beyond a reasonable doubt. Under existing law, because of the

evidentiary gap, we cannot say that under the law Byron's guilt of driving while intoxicated was demonstrated by the evidence to such a degree that the jury could find guilt beyond a reasonable doubt. Accordingly, we find that the evidence was insufficient to support the verdict that Byron was operating the vehicle while intoxicated. Byron was entitled to a judgment of acquittal. The judgment is reversed. The defendant is ordered discharged.