**STATE of Missouri, Respondent,**

v.

**Gary G. DAVIS, Appellant.**

**No. WD 66895.**

Missouri Court of Appeals, Western District.

July 3, 2007.

Kent Denzel, State Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen, Shaun Mackelprang and Robert J. (Jeff) Bartholomew, Office of Attorney General, Jefferson City, for Respondent.

Before PAUL M. SPINDEN, Presiding Judge, PATRICIA A. BRECKENRIDGE, Judge, and JAMES M. SMART, JR., Judge.

PAUL M. SPINDEN, Presiding Judge.

Gary G. Davis appeals the circuit court's judgment, convicting him of driving while intoxicated. He complains that the circuit court erred in overruling his motion for judgment of acquittal at the close of the evidence because the state presented insufficient evidence to make a submissible case. We disagree and affirm the circuit court's judgment.

The conviction resulted from an incident on March 3, 2004, in Callaway County. As Angela Butcher returned home from a shopping trip at about 2:20 P.M., she saw a sports utility vehicle driven by Davis veer off the road, drive through her yard, and damage her property. Butcher had to slow her car to avoid a collision with Davis' vehicle as it re-entered the road. About an hour later, while she was surveying the damage to her property, Davis drove by Butcher's house again. Butcher called the sheriff to report the incident, and Highway Patrol Trooper Brandon White returned her telephone call. At about 3:50 that afternoon, while Butcher and Trooper White were talking on the telephone, Butcher again saw Davis drive by her house.

While driving to Butcher's house to investigate the incident, Trooper White noticed a vehicle matching the description of the vehicle that Butcher had given him. White stopped at the house where the vehicle was parked and noticed an empty, cold beer can on the ground next to the vehicle. White touched the vehicle's hood, and it felt warm.

A few minutes after 4 P.M., White walked up to the house and spoke to Davis. White noticed that Davis' balance was poor, that he smelled of alcohol, that his eyes were bloodshot, and that his speech was slurred. Davis told White that he had just bought the vehicle and had not driven it that day. White left and brought Butch-

er back to Davis' house about seven minutes later. Butcher identified Davis as the person whom she had seen drive the vehicle through her yard. Davis denied the accusation. White looked at the vehicle's title and noticed that Davis had purchased the vehicle that day. Davis claimed that Midwest Motors had delivered it to him.

At this point, Davis appeared aggravated. He was initially calm, became irate, and then calmed down again. Davis refused to submit to field sobriety tests. White believed that Davis was intoxicated and arrested him for driving while intoxicated. Davis did not cooperate in the arrest. Later, when White requested that Davis submit to a chemical test of his breath, Davis did not respond, although White was certain that Davis had heard him.

Before trial, when Davis and Butcher were at a mutual friend's house, Davis apologized to Butcher "for any inconvenience that he caused and that he hoped there wasn't any hard feelings." At trial, Chris Schumann, co-owner of Midwest Auto Sales, denied having delivered the vehicle to Davis. He testified that he had told Davis to pick up the vehicle later because "at that time [he] didn't feel like [Davis] should be driving," but he did not explain his opinion because no one asked him why he believed that Davis should not be driving.

█ In reviewing the sufficiency of the evidence, we deem all evidence favorable to the state to be true. *State v. Crawford*, 68 S.W.3d 406, 407 (Mo. banc 2002). We do not reweigh the evidence, and we disregard all evidence and inferences contrary to the verdict. *Id.* at 408. Our review is limited to determining whether or not the state presented sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Id.*

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1, RSMo 2000 (emphasis omitted). "[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Section 577.001.2, RSMo 2000 (emphasis omitted).

█ Davis did not contest on appeal that he was intoxicated on the day of his arrest. He asserted only that the state did not present sufficient evidence that he was intoxicated while he was driving. The jury had sufficient evidence to find Davis guilty of driving while intoxicated.

█ None of the state's evidence of Davis' intoxication established that he had been drinking before Butcher saw him driving his vehicle. Generally, a significant lapse of time between a defendant's driving and being seen in an intoxicated condition requires the prosecuting attorney to offer specific evidence that the defendant was intoxicated when the defendant was driving. *State v. Byron*, 222 S.W.3d 338, 342 (Mo.App., 2007). On the other hand, a brief lapse of time between a defendant's driving and being seen in an intoxicated condition requires less exacting evidence of the defendant's intoxication. For example, in *State v. Johnston*, 670 S.W.2d 552 (Mo. App.1984), an interval of less than 30 minutes between when a defendant was known to be driving and when he was observed in an intoxicated condition was deemed to put the time of driving and intoxication in a close enough time frame to support a conviction of driving while intoxicated. In commenting on *Johnston*, the *Byron* court said, "This proposition [as enunciated in *Johnson*,] is in accord with the generally recognized principle that it often takes thirty minutes or more for alcohol that is

imbibed to enter the bloodstream to such a degree as to produce intoxication. *See* 2 Donald H. Nichols & Flem K. Whited III, *Drinking/Driving Litigation: Criminal and Civil* Sections 14.3, 14.27 (2d ed.1998)." *Byron,* slip op. at 7 n. 3.

A number of other cases hold that a motorist's being found in an intoxicated condition after driving can support an inference that the motorist was intoxicated while driving. *See State v. Scholl,* 114 S.W.3d 304 (Mo.App.2003) (defendant left party at which participants were drinking and defendant was found intoxicated in his car within 15 minutes after single car accident); *State v. Johnson,* 955 S.W.2d 786, 788 (Mo.App.1997) ("evidence supported an inference that defendant was intoxicated when he failed to make a curve and drove off the highway because the accident was promptly reported, and the officer arrived eleven minutes after the report and found defendant intoxicated"); *State v. Eppenauer,* 957 S.W.2d 501, 503 (Mo.App. 1997) (defendant found intoxicated while walking about a mile from accident and "remote site of the one-car accident and the absence of alcohol containers in [the defendant's] car or the surrounding area reasonably tended to show access to alcoholic drink was unavailable from the time" of the accident until officer found him); *State v. Owen,* 869 S.W.2d 310, 312 (Mo. App.1994) (officer found defendant intoxicated at the scene of the accident "only a very short time" after the accident, defendant smelled of alcohol, no alcohol containers were found in defendant's vehicle, and defendant said he had been drinking that night); *State v. Brown,* 749 S.W.2d 448 (Mo.App.1988) (defendant likely drove his vehicle off the highway in an erratic manner and was found only minutes later intoxicated in his car in which no cans or bottles were found); *State v. Helm,* 755 S.W.2d 256 (Mo.App.1988) (about 10 minutes after accident, officers found defendant intoxicated in his car in which they found beer cans and defendant admitted to extensive drinking that evening); *State v. Wolf,* 727 S.W.2d 477 (Mo.App.1987) (witnesses found defendant immediately after his car struck a parked car acting "dazed" and smelling of alcohol); *State v. Cook,* 711 S.W.2d 208 (Mo.App.1986) (officer found defendant intoxicated while changing a tire of car in which he found numerous beer cans and defendant admitted to drinking that day); *State v. Bruns,* 522 S.W.2d 54 (Mo.App.1975) (defendant was seen driving, then discovered 25 minutes later after following his car's trail of liquid, trying to start his car while intoxicated); *State v. Milligan,* 516 S.W.2d 795 (Mo.App.1974) (trooper found defendant intoxicated at accident scene 20 minutes after accident and defendant admitted to drinking but not when and circuit court disbelieved defendant's claim that his brother had brought him whiskey before trooper arrived).[1]

Trooper White discovered Davis to be in an intoxicated state a mere 10 to 15 minutes after Butcher saw him driving. While he talked to White, Davis smelled of alcohol, was unsteady on his feet, and his speech was slurred—evidence that was sufficient for the jury to conclude that Davis was intoxicated. In light of the

---

1. Cases in which the courts considered the time interval too large include *Domsch v. Director of Revenue,* 767 S.W.2d 121 (Mo.App. 1989) (defendant left scene of accident and found an hour and a half later intoxicated); *State v. Block,* 798 S.W.2d 213 (Mo.App. 1990), *abrogated in part by Cox v. Director of Revenue,* 98 S.W.3d 548 (Mo. banc 2003) (witness smelled alcohol at the time of the acci-

dent and police found defendant intoxicated in his home about two hours and 20 minutes after accident); and *State v. Dodson,* 496 S.W.2d 272 (Mo.App.1973) (defendant admitted to drinking two beers before the accident, witnesses at the time of the accident did not detect signs of intoxication, and police found defendant intoxicated at his home about 40 minutes after the accident).

brief time that had elapsed since Butcher had seen him driving, the jury could have reasonably concluded that Davis' level of intoxication could not have resulted from his drinking intoxicants after he arrived home and that he was intoxicated when he was driving 10 to 15 minutes earlier.

The prosecuting attorney presented sufficient evidence to support the jury's verdict. We, therefore, affirm the circuit court's judgment.

PATRICIA A. BRECKENRIDGE, Judge, and JAMES M. SMART, JR., Judge, concur.