**STATE of Missouri, Respondent,**

v.

**Paul Scott GITTEMEIER, Appellant.**

**No. ED 98399.**

Missouri Court of Appeals,
Eastern District,
Division Five.

May 14, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied June
18, 2013.

N. Scott Rosenblum, Erin R. Griebel, Clayton, MO, for Appellant.

Chris Koster, Attorney General, Richard A. Starnes, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

ROBERT M. CLAYTON III, Judge.

Paul Gittemeier ("Gittemeier") appeals from the judgment entered upon a verdict convicting him of driving while intoxicated and trespass in the first degree. He asserts the evidence was insufficient as a matter of law to prove intoxication, he was not operating a motor vehicle on publicly maintained lands or roads, and the trial court improperly granted the State's motion *in limine* regarding Gittemeier's expert witness. We affirm.

## I. BACKGROUND

Gittemeier was charged as a prior and persistent offender with the class B felony of driving while intoxicated ("DWI") as a chronic offender [1] and the class B misdemeanor of trespass in the first degree.

---

1. A chronic DWI offender is a person who has been found guilty of four or more intoxication-related traffic offenses. Section 577.023 RSMo (Cum.Supp.2012). The amended information listed four prior DWI convictions.

The evidence presented at trial revealed the following. At approximately 5:45 a.m. on July 31, 2010, Gittemeier's neighbor, James Preis, witnessed Gittemeier riding his ATV on Preis's lawn while holding what appeared to be a bottle of vodka. Preis told Gittemeier to leave and called the police. Gittemeier drove away and then returned, when he proceeded to tip over the ATV following an apparent attempt to do "donuts" on the lawn. Preis tackled Gittemeier with the intent to hold him until police came. He testified Gittemeier smelled of alcohol, was incoherent and slurring, discussed random topics, and started to doze off. After fifteen minutes, Preis released Gittemeier, who walked home.

Sheriff's Deputy Kurt Hey arrived around 6:30 a.m., and made contact with Gittemeier at his residence. Deputy Hey testified that when he interviewed Gittemeier at around 6:45 a.m., Gittemeier had bloodshot eyes, was mumbling, smelled of intoxicants, and was swaying and stumbling. Gittemeier admitted to drinking "a few" drinks and stated he had not consumed any alcohol after the incident with Preis. Deputy Hey conducted several standardized field sobriety tests, which Gittemeier failed. Deputy Hey concluded Gittemeier was intoxicated and placed him under arrest at 7:40 a.m. After he was arrested, Gittemeier again stated he had not consumed any alcohol after the incident. Gittemeier refused a breath test, and, after a warrant was obtained, a paramedic conducted two blood draws at 11:36 a.m. and 12:06 p.m. The 11:36 a.m. blood sample revealed Gittemeier had a blood alcohol content ("BAC") of 0.170%, and the 12:06 p.m. sample revealed a BAC of 0.167%.

The jury returned a verdict of guilty on both counts. The trial court sentenced Gittemeier as a prior and persistent of-fender and a chronic DWI offender to concurrent sentences of fifteen years' imprisonment in the Missouri Department of Corrections for the DWI and 90 days in the county jail for first-degree trespassing. This appeal follows.

## II. DISCUSSION

### A. Evidence of Intoxication

■ In his first point on appeal, Gittemeier argues the trial court erred in denying his motion for judgment notwithstanding the verdict or for a new trial, because there was insufficient evidence to prove he was intoxicated at the time he operated the ATV. We disagree.

We review challenges to sufficiency of the evidence supporting a criminal conviction for whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. *State v. Gibbs*, 306 S.W.3d 178, 181 (Mo.App. E.D. 2010). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.*

■ "A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1 RSMo (Cum.Supp.2010). "An intoxicated condition" is defined as being "under the influence of alcohol." Section 577.001.3 RSMo (Cum.Supp.2005). Even in the absence of chemical tests establishing a defendant's BAC, the State may meet its burden to show intoxication through testimony of an alleged offender's physical manifestations of intoxication, such as bloodshot eyes and slurred speech, and through a defendant's difficulty performing the field sobriety tests. *State v. Kni-*

*fong*, 53 S.W.3d 188, 193–94 (Mo.App. W.D. 2001); *see also State v. Scholl*, 114 S.W.3d 304, 307 (Mo.App. E.D.2003).

Gittemeier argues there was insufficient evidence to prove he was intoxicated *at the time* he was operating the ATV at 5:45 a.m. In support of his argument, he relies on *State v. Byron*, 222 S.W.3d 338 (Mo. App. W.D.2007), which held, "[g]enerally, when there is a significant interval of time between the time of an accident and the time that the defendant is observed to be intoxicated, the prosecution must offer specific evidence that the defendant was intoxicated at the time the defendant was driving." *Id.* at 341.

In *Byron*, the defendant was involved in a single car accident with no witnesses sometime between 12:40 a.m. and 1:45 a.m. *Id.* at 339. He left the scene and was interviewed by police at his home at around 2:00 a.m. *Id.* During the interview, police noticed Byron appeared intoxicated and he performed poorly on several field sobriety tests. *Id.* at 340. Byron was charged with DWI. *Id.* At trial, the State presented evidence of Byron's intoxication at the time of his interview and arrest. *Id.* at 342. However, Byron's father testified he had picked up Byron shortly after the accident, at which time he "did not appear to be intoxicated." *Id.* A jury found Byron guilty. *Id.* at 340. The Western District Court of Appeals reversed the conviction, finding there was insufficient evidence to establish Byron drove while intoxicated. *Id.* at 343–44. The court noted that had Byron been found at the scene of the accident soon after it occurred and exhibited the same level of intoxication, there would have been sufficient evidence to support the conviction. *Id.* at 343.

Here, in contrast to *Byron*, although there was a timelag between the incident at 5:45 a.m. and when Deputy Hey interviewed Gittemeier at 6:45 a.m., the State presented sufficient evidence of Gittemeier's intoxication at the time he operated the vehicle. Preis testified Gittemeier was holding a bottle of alcohol while driving the ATV. Further, Preis testified Gittemeier smelled of alcohol while Preis attempted to restrain him; Gittemeier was incoherent and slurring; he rambled about several topics, such as his divorce, his father, and Preis's house; and he started to doze off. This evidence distinguishes the present case from *Byron*, where there was no evidence presented that the defendant had been drinking while operating a vehicle, and the only testimony concerning his condition immediately after the accident was from the defendant's father, who testified that the defendant "did not appear to be intoxicated." *Id.* at 340, 342.

Gittemeier, however, challenges Pries's testimony as inconclusive proof of intoxication and argues Preis's testimony was not credible because it was motivated by his dislike of Gittemeier. The State may meet its burden of proof solely through the testimony of any witness who had reasonable opportunity to observe the defendant's physical condition. *Scholl*, 114 S.W.3d at 307; *State v. Rose*, 86 S.W.3d 90, 105 (Mo.App. W.D.2002). Preis's testimony of Gittemeier's condition immediately after the incident tends to show he was intoxicated at the time of driving. *Scholl*, 114 S.W.3d at 307 (unsteadiness on feet, odor of intoxicants and slurred speech support finding of intoxication).

As to Gittemeier's claim that Preis's testimony was biased and thus not credible, we defer to the jury's superior position to assess the credibility of witnesses and the weight and value of their testimony. *State v. Fleis*, 319 S.W.3d 504, 508 (Mo.App. E.D.2010). Here, evidence of a feud between the neighbors was presented to the jury, and the jury still found Preis's testimony credible.

Moreover, in addition to Preis's testimony that Gittemeier was intoxicated when he operated the ATV at 5:45 a.m., the State introduced evidence that at 11:36 a.m. Gittemeier's BAC was 0.170%. Gittemeier argues his BAC results suggested he drank after but not before the incident. The record, however, does not support this assertion. In addition to Preis's testimony regarding Gittemeier's intoxication, when Gittemeier first spoke with Deputy Hey, he admitted to having "a few" drinks. Although Gittemeier now contends on appeal he could have drank between the incident and his arrest, the record shows he specifically told Deputy Hey that he had not had anything to drink between the incident and his arrest. The combination of Gittemeier's admission of drinking plus his statement that he did not consume alcohol between the incident and his interview with police, constitutes sufficient evidence that Gittemier was intoxicated while driving. *State v. Lynch,* 131 S.W.3d 422, 426 (Mo. App. W.D.2004); *see also State v. Beam,* 334 S.W.3d 699, 707 (Mo.App. E.D. 2011)(we view evidence in light most favorable to verdict and disregard any evidence and inferences contrary to verdict).

Accordingly, the State presented sufficient evidence of intoxication at the time Gittemeier operated the ATV, and thus the trial court did not err in denying his motion for JNOV or a new trial. The first point on appeal is denied.

## B. Operating a Motor Vehicle on Publicly Maintained Roads

In his second point on appeal, Gittemeier argues the trial court erred in instructing the jury on whether he drove a motor vehicle under the influence of alcohol, because his ATV was not a motor vehicle and he claims he did not drive it on publicly maintained roads.

While Section 577.010.1 provides that a person is guilty of DWI if he operates a motor vehicle while in an intoxicated or drugged condition, the language of Section 577.010.1 does not define the term "motor vehicle." Missouri courts will generally make case-by-case determinations categorizing different types of motorized devices as "motor vehicles," depending on the facts of each individual case.

Gittemeier relies on *State v. Slavens,* in which the court found that a non-traditional vehicle operated exclusively on private property as opposed to a public roadway or highway did not violate Section 577.010.1. 375 S.W.3d 915, 918, 920 (Mo. App. S.D.2012). In *Slavens,* the defendant was operating a dirt bike in his yard and did not drive on a public roadway. *Id.* at 916. Following an accident requiring the response of medical personnel, he was charged with and convicted of DWI. *Id.* The Southern District reversed his conviction, finding that "common sense dictate[d] that in the present matter, Slavens' dirt bike was not a motor vehicle under the DWI statute in that it was not designed for use on a public road and was not being operated on one at the time of the accident." *Id.* at 920. The court distinguished cases where non-traditional vehicles were operated on public roadways, and expressed concern that an unlimited reading of the statute to criminalize the operation while intoxicated of any motorized device on private property could lead to "unreasonable and absurd results." *Id.* at 919–20.

Gittemier attempts to align his circumstances in the present case with those of the defendant in *Slavens.* He asserts an ATV is a non-traditional motor vehicle and his operation of the ATV on private property and privately maintained roads was "the exact scenario that the court in *Slavens* rejected." The facts in *Slavens,* how-

ever, are substantially different from the facts of our case.

Regardless of type of motorized device, if a person drives a non-traditional vehicle on a public road, such use can render that vehicle a "motor vehicle." *Covert v. Fisher*, 151 S.W.3d 70, 74–77 (Mo.App. E.D. 2004)(golf cart driven on highway was motor vehicle); *State v. Laplante*, 148 S.W.3d 347, 349–50 (Mo.App. S.D.2004)(motorized mini-bike driven on public street was motor vehicle); *Stonger ex rel. Stonger v. Riggs*, 85 S.W.3d 703, 707–08 (Mo.App. W.D.2002)(riding lawn mower driven on highway was motor vehicle); *see also Martin v. Busch*, 360 S.W.3d 854, 857 n. 3 (Mo.App. E.D.2011)(when interpreting statutes, may look to other, related statutes). Thus, we must first decide whether Gittemeier drove his ATV on a public road. If he did, we need not reach the issue of whether or not an ATV is a motor vehicle.

Gittemeier contends he drove the ATV only on privately maintained roads, and not on public roadways. However, any street, if designated as a thoroughfare or a way for travel, is understood to be a public roadway. *See State v. Davis*, 143 S.W.2d 244, 247 (Mo.1940). Moreover, in *Covert v. Fisher*, this Court upheld a DWI license revocation for driving a golf cart in a private subdivision, finding that where there was evidence that the streets in the private subdivision were open for use and used by the public, those streets were considered the same as a highway for purposes of Chapter 302. 151 S.W.3d at 77. Laws prohibiting DWI violations and their accompanying statutes are enforced on "any street used for public travel, even if the street is privately owned." *See Covert*, 151 S.W.3d at 77.

Here, Preis testified that he and Gittemeier live in a private residential neighborhood with approximately twenty houses on three streets. The streets are two-lane gravel roads maintained by the property owners, not the city or county. Preis testified there was "traffic in [the streets] pretty much throughout the day" from the residents of the neighborhood. Moreover, he testified the neighborhood is serviced by trash trucks, and when homes are for sale, real estate agents and potential buyers drive in the neighborhood. Further, we note that the facts of the case show the neighborhood is open to police and emergency personnel. Gittemeier does not appear to challenge Preis's testimony that Gittemeier drove his ATV onto the subdivision roads before circling back to Preis's lawn where he proceeded to crash his ATV.

This evidence is sufficient to demonstrate that the subdivision, while privately maintained, was open to the public. *See Covert*, 151 S.W.3d at 73, 77 (private subdivision is open to public when "[e]mergency vehicles, delivery vehicles, and members of the public may freely drive into the subdivision"). The purpose of Section 577.010 is to protect the public from intoxicated drivers. *Laplante*, 148 S.W.3d at 350. Because Gittemeier drove his ATV on a road open to the public, he created a "clear hazard to the traveling public." *Id.* Thus, the trial court did not err in sending this issue to the jury. Point two on appeal is denied.

### C. Motion *in Limine*

In his third point on appeal, Gittemeier argues the trial court erred in granting and enforcing the State's motion *in limine* preventing defense expert Joseph Citron ("Dr. Citron") from testifying about Gittemeier's field sobriety tests, because the State would have suffered no unfair surprise from the testimony. In response, the State contends that Gittemeier's claim of error was not preserved and may thus be reviewed only for plain error.

To preserve a claim that evidence was improperly excluded, the party

offering the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof. *State v. Speaks*, 298 S.W.3d 70, 85 (Mo.App. E.D. 2009). An offer of proof must be sufficiently specific to inform the trial court what the evidence will be, the purpose and object of the evidence, and the facts necessary to establishing admissibility of the evidence. *State v. Woods*, 357 S.W.3d 249, 253 (Mo.App. W.D.2012); *Speaks*, 298 S.W.3d at 85. Evidence or testimony made during a pretrial hearing on a motion *in limine* does not ordinarily constitute an offer of proof and, thus, does not preserve anything for appellate review. *See State v. Marshall*, 131 S.W.3d 375, 377 (Mo.App. E.D.2004).

Here, Gittemeier attempted to introduce expert testimony at trial about his field sobriety tests, which were the subject of a pretrial motion *in limine*. The State objected and the trial court sustained the objection, excluding the testimony pursuant to the motion *in limine*. Gittemeier did not make an offer of proof and thus did not preserve the issue for appellate review. Our review is for plain error. *Speaks*, 298 S.W.3d at 85.

■■■■ Under plain-error review, we will reverse only if a plain error affecting substantial rights results in manifest injustice or a miscarriage of justice. *State v. Floyd*, 347 S.W.3d 115, 123–24 (Mo.App. E.D. 2011). We review for plain error using a two-step analysis. First, we determine whether plain error occurred, which is error that is evident, obvious, and clear. If so, we then consider whether the error resulted in manifest injustice or a miscarriage of justice. *Id.* Plain error review requires that the alleged error have a decisive effect on the jury's determination. *See State v. White*, 247 S.W.3d 557, 563 (Mo. App. E.D.2007).

■■■■ The rules of discovery in criminal cases set forth the procedure for mutual pre-trial disclosure between the parties in felony cases. *State v. Simonton*, 49 S.W.3d 766, 779 (Mo.App. W.D.2001). The rules are intended to allow both sides to know the witnesses and evidence to be introduced at trial, and to eliminate surprise at trial. *Id.* When a witness has not been properly disclosed, the trial court is entitled to exclude the testimony of that witness. *State v. Destefano*, 211 S.W.3d 173, 181 (Mo.App. S.D.2007). Exclusion of testimony is, however, a drastic remedy that should be exercised with caution. *Id.* Regardless, the decision to exclude testimony remains within the discretion of the trial court and will only be disturbed on appeal when the sanction results in fundamental unfairness to the defendant. *Id.*; *State v. Lopez*, 836 S.W.2d 28, 32 (Mo.App. E.D.1992).

■■■■ Here, four days before trial, Gittemeier filed an Endorsement of Witness motion disclosing that he would call Dr. Citron as "his expert for the purposes of BAC level at the time of arrest and incident." At a pre-trial hearing on the day of trial, the trial court ruled Gittemeier could endorse Dr. Citron as a witness for purposes of the BAC. However, when counsel for Gittemeier attempted to endorse Dr. Citron as an expert on field sobriety testing, the State filed an oral motion *in limine* to prevent this testimony, stating they were not given notice that Dr. Citron would testify on this topic. The trial court granted the motion.

Gittemeier asserts the State would not have been surprised by Dr. Citron's testimony on the field sobriety tests, because they had an opportunity to interview him before trial. Our review of the record, however, shows that although the State interviewed Dr. Citron for fifteen minutes, there was no evidence before the trial

court that the State questioned him about the field sobriety tests or knew he planned to testify about that topic. Rather, the endorsement notice only stated Dr. Citron would testify about Gittemeier's BAC. Moreover, the State asserted that when it questioned Gittemeier's counsel about the scope of Dr. Citron's testimony, counsel stated he would testify about Gittemeier's BAC. The record in the present case does not reflect that the State was given notice that Dr. Citron would testify about Gittemeier's field sobriety tests, and thus the trial court did not plainly err in preventing Dr. Citron from testifying on this matter. *Destefano,* 211 S.W.3d at 181; *Simonton,* 49 S.W.3d at 779. Point three on appeal is denied.

## III. CONCLUSION

The judgment and sentence are affirmed.

GARY M. GAERTNER, JR., C.J. and THOMAS J. FRAWLEY, Sp. J., concur.