

# In the Missouri Court of Appeals
# Eastern District

### SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107538 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | Cause No. 16CG-CR00658 |
| | ) | |
| LANCE M. SWALVE, | ) | Honorable Craig D. Brewer |
| | ) | |
| Appellant. | ) | Filed: April 7, 2020 |

### OPINION

Lance M. Swalve ("Defendant") appeals the trial court's judgment entered upon a jury

verdict finding him guilty of one count of driving while intoxicated ("DWI"). Defendant raises

two points on appeal. In his first point, Defendant argues that the trial court abused its discretion

in denying his motions for judgment of acquittal because the State presented insufficient

evidence for a reasonable juror to find him guilty of the charged offense beyond a reasonable

doubt. And in his second point, Defendant asserts that the trial court abused its discretion in

denying his objection to the State's use of twelve beer bottles during its closing argument to

demonstrate the amount of alcohol that Defendant had allegedly consumed before driving.

Defendant contends that the prosecutor's statement constituted prejudicial error because the

demonstrative use of the beer bottles misrepresented the evidence admitted at trial and there was

a reasonable probability that it affected the jury's verdict.

1

Finding that the trial court did not err, we affirm the judgment of the trial court.

## I. Factual and Procedural Background

Defendant was charged by information on or about April 14, 2016, of one count of DWI after Defendant was observed in an allegedly intoxicated state by several witnesses at the Isle Casino in Cape Girardeau, Missouri on the evening of March 10, 2016, before Defendant entered a vehicle and drove away from the casino. A jury trial on the matter was held on August 9, 2017. At trial, the State presented evidence detailing the events that formed the basis of Defendant's DWI charge. Specifically, the State presented testimony by Ryan Adams ("Adams") (a casino pit manager), Brian McGowan ("McGowan") (a casino security supervisor), Rodney Beard ("Beard") (a casino surveillance supervisor), and Sergeant Blaine Adams ("Sgt. Adams") (a Missouri State Highway Patrol officer who was working with the Missouri Gaming Commission at the casino) and offered surveillance video and video still images of Defendant while he was present at the casino on March 10, 2016. Defendant did not present any evidence.

The evidence presented at trial demonstrated the following. Defendant arrived at the Isle Casino at approximately 5:15 p.m. on March 10, 2016. Upon arriving, Defendant purchased a pint of beer from a casino bar, and thereafter played table games on the casino floor for the following five hours. During the approximately five hours that Defendant played table games, he obtained 12 more alcoholic beverages—specifically, 12 16-ounce bottles of beer. Beard, who reviewed all of the surveillance footage of Defendant while he was at the casino, confirmed that he did not see Defendant give any drinks away or pour any drinks out. At about 10:20 p.m., Defendant disputed the result of a hand of blackjack, where he claimed that he did not "wave off" the dealer. As a result of this dispute, Adams was alerted and made contact with Defendant and the blackjack dealer. Prior to speaking with Defendant at this point, Adams had not

2

interacted with Defendant or received any other notifications about Defendant's behavior. After speaking with Defendant, Adams (who was trained to identify intoxicated persons in connection with his job, as it was casino policy to disallow intoxicated persons on the casino floor) believed that Defendant was intoxicated based on him being argumentative, slurring his speech, and appearing red in the face.

Adams then contacted Sgt. Adams regarding Defendant's potential intoxication. Sgt. Adams and McGowan responded to the casino floor to speak with Defendant, and invited Defendant to view the surveillance video footage of the hand of blackjack that Defendant disputed. After viewing the footage, Defendant conceded that he was incorrect and did indeed wave off the dealer during the hand at issue. Following their interaction with Defendant, Sgt. Adams and McGowan (both of whom are trained to identify intoxicated persons) both concluded that Defendant was intoxicated because he had glassy and bloodshot eyes, slurred his speech, swayed where he stood, and had an odor of intoxicants. Upon making this determination, Sgt. Adams told Defendant that, per casino policy, Defendant could not return to the casino floor because he was intoxicated. Defendant was then escorted to the casino lobby at 10:34 p.m.

Approximately 20 minutes later at 10:54 p.m., Defendant requested to again speak with Sgt. Adams and attempt to prove that he was not intoxicated. Sgt. Adams asked Defendant how intoxicated he was on a scale of one to ten (one being sober and ten being drunk to the point of staggering, vomiting, and falling down), to which Defendant responded "five." After this second interaction, Sgt. Adams believed that his determination regarding Defendant's intoxication was still correct, and advised Defendant that he needed to wait five or six hours before he drove home or to find a ride home. Sgt. Adams encountered Defendant for the final time that night when Defendant attempted to re-enter the casino floor at approximately 11:18 p.m. When this last

3

interaction concluded at approximately 11:20 p.m., Sgt. Adams again noted the signs of Defendant's intoxication (particularly, Defendant's argumentative demeanor) and again told Defendant that he could not drive home because of his "extremely intoxicated" state.

Surveillance video showed that Defendant thereafter exited the casino and initially entered the passenger seat of a vehicle; however, after a few minutes, Defendant switched positions with the person in the driver's seat of the vehicle and proceeded to drive away. After learning that Defendant drove away, Sgt. Adams entered his patrol car and attempted to pursue Defendant because he believed that Defendant was DWI. Sgt. Adams also contacted another Missouri State Highway Patrol officer who was on duty that night and gave him a description of Defendant's vehicle to further attempt to detain Defendant, but neither Sgt. Adams nor the other officer was able to locate Defendant's vehicle. On March 12, 2016, Sgt. Adams called Defendant's home, and notified him that he would be receiving a ticket for DWI. In response, Defendant stated to Sgt. Adams, "I made a bad mistake last night."

At the close of the State's evidence and at the close of all the evidence, Defendant filed motions of acquittal, both of which were denied. During the rebuttal portion of the State's closing argument, the prosecuting attorney placed a 12-pack of beer bottles (which were used previously during trial to illustrate the type of drinks that Defendant was served) on the jury rail and referenced them to demonstrate the amount of alcohol that Defendant allegedly consumed in the five hours that he was on the casino floor. Defendant objected to this statement on the grounds that it was "highly inappropriate," which the trial court overruled. The jury found Defendant guilty of the DWI charge, and Defendant was sentenced to 180 days in jail with execution of that sentence suspended and Defendant placed on two years' supervised probation.

This appeal follows.

## II.     Discussion

Point I

In his first point on appeal, Defendant argues that the trial court abused its discretion in denying Defendant's motions for judgment of acquittal because the State presented insufficient evidence such that a reasonable juror could not have found Defendant guilty beyond a reasonable doubt of the DWI charge. Defendant further asserts that "[i]t was impossible for a reasonable juror to find [Defendant] guilty based on the evidence presented at trial as the time interval between his last possible consumption of alcohol and his departure from the Casino dispelled any reasonable doubt that he was intoxicated."

### a. Standard of Review

"We review claims challenging the sufficiency of the evidence supporting a criminal conviction by determining whether the State presented sufficient evidence at trial from which a reasonable jury might have found the defendant guilty of all the essential elements of the crime beyond a reasonable doubt." *State v. Lopez,* 539 S.W.3d 74, 78 (Mo. App. E.D. 2017) (citing *State v. Gibbs,* 306 S.W.3d 178, 181 (Mo. App. E.D. 2010)). We accept as true all evidence and inferences therefrom supporting the jury's verdict, and disregard all contrary evidence and inferences. *State v. Gittemeier,* 400 S.W.3d 838, 841 (Mo. App. E.D. 2013).

### b. Analysis

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1.[1] "To sustain a conviction, the State must prove through direct or circumstantial evidence not only that the defendant was intoxicated, but also that the defendant operated the vehicle while in this condition." *Lopez,* 539

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. 2016.

S.W.3d at 78; *see also State v. Donovan,* 539 S.W.3d 57, 66 (Mo. App. E.D. 2017) ("[T]o obtain a DWI conviction, the State must prove beyond a reasonable doubt that the defendant (1) operated a vehicle (2) while intoxicated."). "Circumstantial evidence is evidence that does not directly prove a fact but gives rise to a logical inference that the fact [exists]." *Lopez,* 539 S.W.3d at 78 (citing *State v. Putney,* 473 S.W.3d 210, 216 (Mo. App. E.D. 2015)). Circumstantial and direct evidence are given the same weight when considering the sufficiency of the evidence. *Id.* (citing *State v. Shoemaker,* 448 S.W.3d 853, 856 (Mo. App. W.D. 2014)).

In this case, there is abundant evidence detailing Defendant's intoxicated state prior to driving. Specifically, the exhibits and testimony presented at trial showed that Defendant was served 13 alcoholic beverages in the five hours before his interactions with Adams, McGowan, and Sgt. Adams, that each of those individuals noticed that Defendant exhibited indicators of intoxication (such as slurred speech, facial redness, glassy and bloodshot eyes, swaying while standing, smelling of intoxicants, and being argumentative), and that Defendant drove away from the casino just over an hour after first interacting with those witnesses and just 16 minutes after Sgt. Adams last identified that Defendant was intoxicated. We find that a reasonable jury could have found Defendant guilty beyond a reasonable doubt of the DWI charge from this evidence and the reasonable inferences drawn therefrom.

Even absent chemical and field-sobriety tests, the State may still meet its burden of proof to show that a defendant was intoxicated while driving. *Gittemeier,* 400 S.W.3d at 841; *State v. Scholl,* 114 S.W.3d 304, 307–08 (Mo. App. E.D. 2003). "[T]he State may prove intoxication through circumstantial evidence and the testimony of witnesses who had a reasonable opportunity to observe the defendant." *Lopez,* 539 S.W.3d at 78 (citing *Putney,* 473 S.W.3d at 215–16); *see also Gittemeier,* 400 S.W.3d at 842 ("The State may meet its burden of proof solely

6

through the testimony of any witness who had reasonable opportunity to observe the defendant's physical condition."). While there were no blood test results or field-sobriety test results presented to show that Defendant was intoxicated when he drove, the testimony of Adams, McGowan, and Sgt. Adams combined with the circumstantial evidence presented here (specifically, that Defendant obtained 13 alcoholic beverages in the hours before driving home) is sufficient to give rise to the logical inference that fact was true. *See Lopez,* 539 S.W.3d at 78.

Defendant's primary argument is that the "significant time gap" between his drinking and when he drove combined with there being no evidence of exactly how much alcohol Defendant consumed prior to driving make it "impossible for a reasonable juror to find [Defendant] guilty." We first note that it is reasonable for the jury to infer that Defendant consumed all or a substantial portion of the 13 drinks he was served at the casino; it is logical that Defendant would not continue to order drinks unless he finished the one he had previously.[2] As the jury clearly inferred from the evidence presented that Defendant consumed enough alcohol to become intoxicated, we accept it as true. *See Gittemeier,* 400 S.W.3d at 841; *Lopez,* 539 S.W.3d at 78.

Further, in support of his contention that it is impossible for a reasonable jury to find him guilty of the DWI charge because of the gap in time between his drinking and when he drove, Defendant largely relies on Missouri DWI cases where the defendant was in a car accident and the defendant's intoxication was discovered some time after. Specifically, Defendant argues that the holding of *State v. Byron,* 222 S.W.3d 338 (Mo. App. W.D. 2007) (citing *State v. Dodson,* 496 S.W.2d 272, 273–74 (Mo. App. W.D. 1973)), where the court overturned the defendant's DWI conviction because the defendant could have obtained and consumed alcohol and become intoxicated in the time between when he crashed his car and when he was found intoxicated by

---

[2] For further discussion of why it was reasonable to infer that Defendant consumed all or most of the alcohol he was served, *see infra* <u>Point II</u>, *B. Analysis*.

7

police, is applicable to this case. In *Byron*, the evidence showed that the defendant had an accident when he ran his car off the road, but was only found some time later intoxicated at his home. *Id.* at 342–43. During the time between the accident and when police found the defendant intoxicated, he had walked from the accident scene to a grocery store, where he was picked up by his father and driven home. *Id.* The court in *Byron* concluded that "because of the evidentiary gap, we cannot say that under the law Byron's guilt of driving while intoxicated was demonstrated by the evidence to such a degree that the jury could find guilt beyond a reasonable doubt." *Id.* at 343–44.

The facts of this case are quite distinguishable from those present in *Byron*. The result of *Byron* turned on the amount of time between the accident and when the defendant's intoxication was discovered (between 40 minutes and almost 1.5 hours) and that the defendant had opportunity to obtain alcohol after the accident such that there was reasonable doubt as to whether he became intoxicated only *after* driving, and not before or while driving. *Id.* Here, there was plentiful evidence presented at trial demonstrating that Defendant was intoxicated prior to driving; the testimony of the witnesses trained to identify intoxicated persons certainly supports that Defendant was intoxicated from the time he left the casino floor (at approximately 10:20 p.m.) to the last interaction that Defendant had with Sgt. Adams (at approximately 11:20 p.m.). Sgt. Adams confirmed during his testimony that he observed the same signs of Defendant's intoxication (bloodshot and glassy eyes, slurred speech, argumentative behavior, and strong odor of intoxicants on his breath) during his final interaction with Defendant at 11:20 p.m. (approximately 16 minutes before Defendant drove away from the casino) as his previous encounters with Defendant. From that evidence in particular, the jury could certainly reasonably infer that Defendant was still intoxicated when he drove away from the casino at 11:36 p.m.

8

Missouri DWI cases addressing a temporal gap between when a defendant was observed intoxicated and when the defendant drove a vehicle state generally that an interval of 30 minutes or less "is on its face sufficiently close in time to support an inference of intoxication while driving." *Lopez,* 539 S.W.3d at 78 (citing *State v. Davis,* 226 S.W.3d 927, 929 (Mo. App. W.D. 2007)).[3]

In essence, Defendant proposes that he could have become sober between when Adams, McGowan, and Sgt. Adams observed him intoxicated and when he drove. However, "[t]he State is not required to disprove every *possible* theory under which a defendant could be innocent," but rather, "evidence is sufficient to support guilt if *any* reasonable inference supports guilt, even if other 'equally valid' inferences do not." *State v. Rastorfer,* 574 S.W.3d 282, 287 (Mo. App. W.D. 2019) (quoting *State v. Varnell,* 316 S.W.3d 510, 518 (Mo. App. W.D. 2010) and *Putney,* 473 S.W.3d at 219). Undoubtedly, the time between driving and intoxication is often a determinative factor in DWI cases, and in this case, the direct and circumstantial evidence presented (specifically, that showing Defendant obtained 13 beers, was observed intoxicated at 11:20 p.m., and drove away from the casino at 11:36 p.m.) supported the reasonable inference by the jury that Defendant was intoxicated while driving, and we must disregard any inference to the contrary. *See Gittemeier,* 400 S.W.3d at 841; *Lopez,* 539 S.W.3d at 78. We therefore find that the State presented sufficient evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt of the DWI charge.

Point I is denied.

---

[3] While we note that both *Lopez* and *Davis* addressed factual situations where the defendant was observed intoxicated shortly after driving, we believe the holdings of those cases are persuasive in this case, as both emphasized that 30 minutes was a brief enough timespan to support that the defendants were intoxicated when they drove.

<u>Point II</u>

In Defendant's second point on appeal, he argues that the trial court abused its discretion in overruling his objection to the State's use of twelve beer bottles during the rebuttal portion of its closing argument to demonstrate how much Defendant had to drink before driving away from the casino. Defendant asserts that this abuse of discretion was prejudicial to his defense because the use of the twelve-pack of beer bottles misrepresented the evidence presented during trial and created a reasonable probability that the jury's verdict would have been different absent that statement.

*a. Standard of Review*

Where a defendant objects to a statement made by the prosecuting attorney during closing arguments, we review the trial court's alleged error for abuse of discretion. *State v. Tramble,* 383 S.W.3d 34, 37 (Mo. App. E.D. 2012); *State v. Brown,* 337 S.W.3d 12, 14 (Mo. banc 2011). "An abuse of discretion occurs when a defendant is prejudiced such that 'there is a reasonable probability that the outcome at trial would have been different if the error had not been committed.'" *State v. Holmsley,* 554 S.W.3d 406, 410 (Mo. banc 2018) (quoting *State v. Deck,* 303 S.W.3d 527, 540 (Mo. banc 2010)). "Closing arguments must be examined in the context of the entire record." *Tramble,* 383 S.W.3d at 37 (quoting *Deck,* 303 S.W.3d at 540).

*b. Analysis*

"The trial court has broad discretion in controlling the scope of closing arguments." *State v. Cross,* 497 S.W.3d 271, 279 (Mo. App. E.D. 2016); *see also Tramble,* 383 S.W.3d at 37. The State is allowed to argue the evidence and all reasonable inferences therefrom during closing argument. *State v. Walter,* 479 S.W.3d 118, 125 (Mo. banc 2016) (citing *Brown,* 337 S.W.3d at 14). However, while the State has wide latitude during closing argument, "courts should exclude

10

statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." *Cross,* 497 S.W.3d at 279; *Holmsley,* 554 S.W.3d at 410. "The latitude given to parties in closing does not serve as an end run around the law of evidence," but rather, "[c]losing argument grants each side the opportunity to highlight the evidence that was presented." *Walter,* 479 S.W.3d at 125 (quoting *Brown,* 337 S.W.3d at 15).

During the rebuttal portion of the State's closing argument in this case, the prosecuting attorney referenced a 12-pack of beer bottles (that had been used earlier during trial when Sgt. Adams confirmed that those were the type of beverage served to Defendant) to suggest that Defendant had consumed that amount of alcohol plus one pint of beer before driving. Specifically, the prosecutor stated to the jury, "[Y]ou now know how much he had to drink, and I know how much he had to drink. And what's the answer to that question? The answer to that question --" at which point, the prosecutor referred to the 12-pack of beer bottles and Defendant objected. After Defendant's objection was overruled by the trial court, the prosecutor clarified repeatedly that the 12-pack was equal to the amount of alcohol that Defendant *obtained*, and pointed out that Beard had testified that he did not see Defendant give any drinks away or throw drinks out while reviewing the hours of surveillance footage of Defendant at the casino.

In this case, we cannot say that the trial court abused its discretion in overruling Defendant's objection to the prosecutor's statement referencing the 12-pack of beer bottles. First and foremost, as alluded to *supra* Point I, *B. Analysis*, the State's inference that Defendant consumed all or most of the drinks that he obtained is a reasonable one that could be drawn from the evidence presented. The photographic stills and surveillance video of when Defendant obtained his drinks, Beard's testimony that he did not see Defendant give any drinks away or pour drinks out, and testimony by Adams, McGowan, and Sgt. Adams regarding Defendant's

11

intoxicated state support the inference that Defendant consumed most if not all of the drinks he obtained. Considering the combined evidence presented, the State's inference that Defendant consumed an amount of alcohol equal to or greater than the 12-pack of beer was a reasonable one that fell within the wide latitude that the State is granted during closing argument. *Walter,* 479 S.W.3d at 125; *Brown,* 337 S.W.3d at 14. Further, we find that there is no reasonable probability that the outcome of trial would have been different absent the prosecutor's statement, as that statement simply repeated the evidence presented at trial and made a reasonable inference from that evidence. *See Holmsley,* 554 S.W.3d at 410. As such, we find that the trial court did not abuse its discretion in overruling Defendant's objection to the prosecutor's statement during the State's closing argument.

Point II is denied.

### III.     Conclusion

For the foregoing reasons, we find that there was sufficient evidence presented from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt of the DWI charge and that the trial court did not abuse its discretion in overruling Defendant's objection to the prosecutor's statement referencing the 12-pack of beer bottles during the State's closing argument. The judgment of the trial court is affirmed.

_____

Colleen Dolan, Chief Judge

Robert G. Dowd, Jr., J., concurs.
Lisa P. Page, J., concurs.

12